## SYLVESTER CO. v. NICHOLS, Collector of Internal Revenue.

(District Court, D. Massachusetts. February 11, 1925.)

No. 2123.

Internal revenue ☜7—Corporation in computing excess profits tax held ʼentitled to retain taxes for previous year as part of its invested capital until 105 days after time for filing return.

Additional income tax and excess profits taxes, imposed under Revenue Act October 3, 1917, §§ 4, 200–214 (Comp. St. 1918, §§ 6336jj, 6336⅜a–6336⅜o) for fiscal year ending June 30, 1917, held due and payable under Act September 8, 1916, § 14a (Comp. St. § 6336n), 105 days after expiration of extensions for filing returns granted by commissioner of internal revenue under section 14c, and corporation in computing excess profits tax for fiscal year ending June 30, 1918 was entitled to retain amount of tax for 1917 as part of its invested capital until time tax was so payable.

At law. Action by the Sylvester Company against Malcolm E. Nichols, Collector of Internal Revenue. Judgment for plaintiff.

Norman W. Bingham, Jr., and Blodgett, Jones, Burnham & Bingham, all of Boston, Mass., for plaintiff.

Robt. O. Harris, U. S. Atty., and Albert F. Welsh, Asst. U. S. Atty., both of Boston, Mass., for defendant.

BREWSTER, District Judge. The Sylvester Company, a Massachusetts corporation, brings this action to recover $3,411.-74 paid the defendant under protest in response to a demand based upon an additional assessment of excess profits tax, which sum the plaintiff alleges was illegally exacted by the defendant.

The plaintiff corporation had designated for the purpose of computing its income tax imposed by the act of September 8, 1916 (39 Stat. 756), its fiscal year ending June 30 in each year. It duly filed its· return of income for the fiscal year ending June 30, 1917. Thereafter the Revenue Act of October 3, 1917 (40 Stat. 300), was passed, imposing an additional income tax and an excess profits tax upon corporations, to be measured by income derived subsequent to January 1, 1917. This act required supplemental return of corporations returning incomes for the fiscal year ending prior to December 31, 1917, and the commissioner of internal revenue, by successive orders, extended the time within which such returns might be filed to March 1, 1918. The plain-

tiff filed its supplemental return within the extended time, and the war profits tax and excess profits tax were duly assessed and paid. No question is raised regarding this tax. But, when the plaintiff filed its return of net income for its fiscal year ending June 30, 1918, in calculating its average invested capital for the purpose of determining the excess profits tax, it did not deduct from its invested capital the amount of the additional tax and excess profits tax paid until June 14, 1918. Or, to state the case in plaintiff's own language, it claimed the right to retain this amount as part of its invested capital until June 14, 1918.

The commissioner of internal revenue, however, took the position that the sum should have been retained only until December 15, 1917, when it should have been excluded from invested capital. Proceeding on this latter theory, the Department of Internal Revenue arrived at an amount of excess profits tax due for the fiscal year ending June 30, 1918, which, with interest and penalties, amounted to $3,411.74 in excess of the amount due if the plaintiff's course had been adopted. This difference of opinion as to the date when, for the purpose of arriving at the average invested capital, these taxes should have been deducted has led to the present controversy.

In order better to understand the occasion and significance of the controversy, it will be necessary to briefly refer to certain provisions of the Revenue Act of 1916 and the Revenue Act of 1917 with certain pertinent regulations of the department.

The act of 1916 provided, in substance, that a corporation which had designated its fiscal year for the computation of the tax should file a return of its annual net income within sixty days after the close of such fiscal year. Section 14a (Comp. St. § 6336n), provided as follows:

"All assessments shall be made and the several corporations * * * shall be notified of the amount for which they are respectively liable on or before the first day of June of each successive year, and said assessment shall be paid on or before the fifteenth day of June: Provided, That every corporation, joint-stock company or association, and insurance company, computing taxes upon the income of the fiscal year which it may designate in the manner hereinbefore provided, shall pay the taxes due under its assessment within one hundred and five days after the date upon which it is required to file its list or return of income for assessment. * * *"

Section 14(c) provides for penalties for failure or refusal to file returns or for false and fraudulent returns, and as a part of this section it was provided:

"That the commissioner of internal revenue shall have authority, in the case of either corporations or individuals, to grant a reasonable extension of time in meritorious cases, as he may deem proper."

The War Revenue Act of 1917 imposed upon corporations two additional taxes. In section 4 of the act (Comp. St. 1918, § 6336jj) a war income Tax was imposed, and sections 200 to 214 (sections 6336⅜a-6336⅜o) provide for the war excess profits tax.

Relative to the war income tax on corporations, the following provisions of section 4 are pertinent to our present inquiry:

"The tax imposed by this section shall be computed, levied, assessed, collected, and paid upon the same incomes and in the same manner as the tax imposed by subdivision (a) of section ten of such act of September eighth, nineteen hundred and sixteen, as amended by this act, except that for the purpose of the tax imposed by this section the income embraced in a return of a corporation, joint-stock company or association, or insurance company, shall be credited with the amount received as dividends upon the stock or from the net earnings of any other corporation, joint-stock company or association, or insurance company, which is taxable upon its net income as provided in this title."

And as to the war excess profits tax, section 200 of the act (Comp. St. 1918, § 6336⅜a) contains the following provisions:

"The term 'taxable year' means the twelve months ending December thirty-first, excepting in the case of a corporation or partnership which has fixed its own fiscal year, in which case it means such fiscal year. The first taxable year shall be the year ending December thirty-first, nineteen hundred and seventeen, except that in the case of a corporation or partnership which has fixed its own fiscal year, it shall be the fiscal year ending during the calendar year nineteen hundred and seventeen. If a corporation or partnership, prior to March first, nineteen hundred and eighteen, makes a return covering its own fiscal year, and includes therein the income received during that part of the fiscal year falling within the calendar year nineteen hundred and sixteen, the tax for such taxable year shall be that proportion of the tax computed upon the net income during such full fiscal year which the time

from January first, nineteen hundred and seventeen, to the end of such fiscal year bears to the full fiscal year. * * * "

Section 212 of the act of 1917 (Comp. St. 1918, § 6336⅜m) is' as follows:

"All administrative, special, and general provisions of law, including the laws in relation to the assessment, remission, collection, and refund of' internal revenue taxes not heretofore specifically repealed, and not inconsistent with the provisions of this title are hereby extended and made applicable to all the provisions of this title and to the tax herein imposed, and all provisions of title I of such Act of September eighth, nineteen hundred and. sixteen, as amended by this act, relating to returns and. payment of the tax therein imposed, including penalties, are hereby made applicable to the tax imposed by this title."

In a communication addressed by the commissioner of internal revenue to all collectors of internal revenue· dated October 16, 1917, and released for publication October 31, 1917, and known as T. D. 2561, the commissioner called attention to the fact that supplemental returns for the purpose of the excess profits tax would be required of corporations making returns for fiscal year ending in 1917. The last paragraph of this communication was as follows:

"Because of the desirability to have all returns made upon a prescribed form and in accordance with approved regulations, and· because of the fact that it will be impossible for several weeks to put into the hands of such corporations the blank forms and instructions prescribed by this department for the use of such corporations in making excess profits tax returns, the time within which such returns may be filed in the case of those corporations whose returns are due to be filed on or before January 1, 1918, is hereby extended to that date. This extension is made pursuant to the proviso in subparagraph (c) of section 14 of title I of the Act of September 8, 1916, and applies also to those corporation income tax returns due to be filed on or before January 1, 1918, the correct preparation of· which depends upon the excess profits tax returns.".

On December 13, 1917, and again on January 22, ·1918, T. D. 2561 (October 16, 1917) was amended extending the time for filing returns until March 1, 1918.

The act of 1917 further provided in section 207 (Comp. St. 1918, § 6336⅜h) that the term "invested capital" for any year means the average invested capital for the year as defined and limited in this title averaged monthly. The section then goes on to further define invested capital, and provides that the term shall include among other things paid in or earned surplus and undivided profits earned during the calendar year. Although' my attention has not been called to any ruling to that effect prior to February 17, 1919, the Department of Internal Revenue seems to have permitted corporations, for the purpose of determining invested capital under the Act of October 3, 1917, to carry amounts paid on account of income and excess profits tax for any year as a part of its surplus and undivided profits for the succeeding year up to the time when such taxes became due and. payable. Whether such practice was consistent with good accounting is not now necessary to determine. It seems to have been the settled policy of the department and later found expression in T. D. 2791, issued February 17, 1919, which is as follows:

"Washington, D. C.

"To Collectors of Internal Revenue and Others Concerned:

"For the purpose of. determining invested capital under title II of the act of October 3, 1917, income and excess profits taxes shall be deemed to have been paid out of the net income for the taxable year for which such taxes are levied. Amounts payable on account of income and excess profits taxes for any year may be included in computing surplus and undivided profits for the succeeding year only for the proportionate part of the year represented by the period of time between the close of the taxable year and the date or dates upon which such taxes become due and payable. (Read Question No. 71, 1918, Excess-Profits Tax Primer.)

"Daniel C. Roper,

"Commissioner of Internal Revenue.

"Approved: February 17, 1919.

"Carter Glass,

"Secretary of the Treasury."

In any event, the plaintiff finds no fault with this departmental regulation, but contends that the department did not determine the invested capital of the plaintiff in accordance with the terms of the ruling.

The solicitor for the Department of Internal Revenue seems to have proceeded in both his argument and brief on the assumption that the tax became due and payable December 14, 1917. He throws very little light on the grounds upon which this assumption is based. If he is right, the plain-

tiff cannot recover. But at the threshold of this case lies the question whether the war profits tax and the excess profits tax imposed under the Revenue Act of 1917 for the fiscal year ending June 30, 1917, became due and payable December 14, 1917, as the defendant claims, or on June 14, 1918, as the plaintiff contends. This is the only question presented by the case as I see it.

Plaintiff arrived at its date of June 14, 1918, by counting 105 days after March 1, 1918, the date to which the time for filing returns was finally extended by the commissioner of internal revenue. The commissioner had authority to grant these extensions under section 14(c) of the act of 1916. While the purpose of the action may well have been to avoid penalties for failure to file earlier returns, the action would also have the effect of extending the time in which the plaintiff "was required to file its list or return."

The plaintiff could not have been required to file its return, under the act of 1917, 105 days prior to December 14, 1917, because at that time the act of October 3, 1917, had not been passed. The act of 1916, by its express terms, fixes the due date of the tax at 105 days after the date upon which the defendant was required to file its return. I can see no escape from the conclusion that the tax did not become due and payable until 105 days after March 1, 1918. If any further support is needed for the conclusion above reached, it would be found in the provisions of the act of 1916, which made the assessment and notice of the amount a prerequisite to liability for the tax. Act of 1916, § 14(a). The contention of the government that the tax became due and payable December 14, 1917, rests on two equally untenable propositions: First, that the plaintiff was required to file its return of income before the enactment of the law calling for the return; and second, that the tax became due and payable before it was ascertained or assessed. These propositions need only to be stated; they carry their own refutation. The commissioner of internal revenue has seen fit in regulations to fix upon the due date of the tax as the date when the amount paid shall be taken from surplus for the purpose of ascertaining average invested capital. If full effect be given this regulation, the plaintiff was entitled to carry the amount of its surplus until the tax became due and payable, which, as above indicated, I find to be June 14, 1918.

The plaintiff therefore is entitled to re-cover the sum of $3,411.74, with interest thereon from September 14, 1922, and judgment for the plaintiff may be entered accordingly.