**NICHOLS, Collector of Internal Revenue, v. SYLVESTER CO.***

(Circuit Court of Appeals, First Circuit. November 23, 1926.)

No. 2005.

1. **Internal revenue** ⟨⟩7(21), 9(27)—**Retroactive tax for fiscal year ending 1917 held not to be considered as part of average invested capital in computing tax for 1918, notwithstanding extension of time for making return (Act Oct. 3, 1917 [40 Stat. 300]; Act Sept. 8, 1916, § 14 [c], being Comp. St. § 6336n).**

Retroactive tax payable under Act Oct. 3, 1917 (40 Stat. 300), by corporation making return on accrual basis during fiscal year ending June 30, 1917, may not be considered as part of invested capital in determining tax during fiscal year ending June 30, 1918, notwithstanding extension of time for making return by Act Sept. 8, 1916, § 14(c), being Comp. St. §6336n, in view of Regulations 33, art. 230, relative to extensions granted by Commissioner.

2. **United States** ⟨⟩40—**Statutes control inconsistent Treasury Decisions.**

Treasury Decisions inconsistent with statutes have no validity.

3. **Internal revenue** ⟨⟩22—**1926 act, referring to taxes computed according to regulations in force at the time, held not to render Treasury Decision applicable to tax computed before it was issued (Act Feb. 26, 1926, § 1207 [44 Stat. 129]; Act Oct. 3, 1917 [40 Stat. 300]).**

Act Feb. 26, 1926, § 1207 (44 Stat. 129), referring to regulations not in force when 1918 tax was to be computed, *held* inapplicable in determining validity of tax under Act Oct. 3, 1917 (40 Stat. 300).

In Error to the District Court of the United States for the District of Massachusetts; Elisha H. Brewster, Judge.

Action by the Sylvester Company against Malcolm E. Nichols, Collector of Internal Revenue. Judgment for plaintiff (3 F.[2d] 452), and defendant brings error. Reversed and remanded.

George R. Farnum, Asst. U. S. Atty., of Boston, Mass. (Harold P. Williams, U. S. Atty., of Boston, Mass., on the brief), for plaintiff in error.

Norman W. Bingham, Jr., of Boston, Mass. (George S. Fuller and Blodgett, Jones, Burnham & Bingham, all of Boston, Mass., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. On agreed facts, the court below entered judgment for the plaintiff for an additional income and excess profits tax (paid under protest) accruing during the plaintiff's fiscal year ending June 30, 1918. 3 F.(2d) 452. The contro-

*Certiorari denied 47 S. Ct. 475, 71 L. Ed. ——.

versy is a by-product of the retroactive feature of the Act of October 3, 1917, 40 Stat. 300, which took effect as of January 1, 1917. The plaintiff kept its books and made its returns on the accrual basis, in conformity with section 13(d) of the act of 1916 (39 Stat. 756). The accrual basis, of course, means that the concern set up as liabilities such obligations as taxes during the period within which such liabilities *accrued* and not when they were actually paid and discharged, which would be substantially later. But the plaintiff now claims that it had the right to treat the additional tax, paid under the retroactive provision of the Act of October 3, 1917, as part of its average invested capital in computing its tax for 1918, until it actually paid it on June 14, 1918. The court below held this claim sound. The Commissioner of Internal Revenue had ruled that the tax should have been deducted as of December 15, 1917, and computed and collected the tax for 1918 on that basis.

The amount remaining in controversy is $3,411.74, with interest from September 14, 1922.

[1] Under the Act of October 3, 1917, the retroactive tax was to be computed and paid under the administrative provisions of the 1916 act, supra. This act required the taxpayer to file its return within 60 days after the close of its fiscal year, and under section 14 (a), being Comp. St. § 6336n, to pay the tax within 105 days more—165 days in all. As the Act of October 3, 1917, was retroactive to January 1, 1917, obviously returns could not be made by taxpayers whose fiscal year ended June 30, 1917, within 60 days from June 30th; hence, and also in order to have time to furnish the requisite blanks for the supplementary returns, the Commissioner, under the authority of Act 1916, § 14(c), extended the time for returns until March 1, 1918. T. D. 2561.

The plaintiff's claim, sustained by the court below, was that thus this additional tax had not become "due and payable" until 105 days from March 1, 1918, or June 14, 1918, and that therefore until June 14, 1918, it was entitled to treat this additional tax (apparently over $60,000) as part of its average invested capital in computing its tax for the year ending June 30, 1918. We think this claim and ruling inconsistent with the fundamental theory of the accrual method of accounting and making tax returns.

The facts that the retroactive feature of the Act of October 3, 1917, and the resultant extensions for returns gave the plaintiff the use of the money, otherwise payable to the government from its profits made during the

year ending June 30, 1917, did not make this money legally a part of its average invested capital during that period of almost a year, and thus operate to reduce its tax for 1918. Potentially this money belonged to the United States on July 1, 1917. It was, so to speak, accidental that the government did not and could not enforce its right to possession until June 14, 1918. Under the accrual theory, the average invested capital under section 207 of the 1917 act (Comp. St. § 6336⅜h) could not include as "earned surplus and undivided profits" money already, in law, earmarked as a tax liability for the preceding year. The liability for the 1917 tax arose on the passage of the act, October 3, 1917, and was actually fixed by the act as of January 1, 1917. The return for this additional tax was, in theory, then overdue. True, under section 14 (a) of the 1916 act, it would not have been "due and payable" until December 15, 1917, 165 days from June 30, 1917, as the Commissioner ruled. But the extensions for making returns, granted as much for the benefit of the taxpayer as of the government, could not transmute a liability of 1917 into a legal asset for 1918. Besides, in article 230 of Regulations 33, governing the collection of income taxes, it is provided:

"Extension of time for making return does not extend time of payment. Any extension granted by the collector or Commissioner of the time within which to file returns will not be construed to correspondingly extend the time for the payment of the tax. If for any reason a return should not be made until the time fixed by law for the payment of the tax has passed, the tax assessed on the basis of such return shall be paid upon notice and demand."

The court below quotes, and apparently grounds his decision thereon, T. D. 2791, issued February 17, 1919, which is as follows:

"For the purpose of determining invested capital under title 2 of the Act of October 3, 1917, income and excess profits taxes shall be deemed to have been paid out of the net income for the taxable year for which such taxes are levied. Amounts payable on account of income and excess profits taxes for any year may be included in computing surplus and undivided profits for the succeeding year only for the proportionate part of the year represented by the period of time between the close of the taxable year and the date or dates upon which taxes become due and payable. Read question No. 71, 1918, Excess Profits Tax Primer."

[2] We cannot regard this Treasury Decision as either controlling or even helpfully guiding. Of course, if inconsistent with the statutes, it has no validity. Besides, we are unable to reconcile the first and second sentences. The first sentence says explicitly that such "taxes shall be deemed *to have been paid* out of the net income for the taxable year for which such taxes are levied." The application of that statement to the facts in this case would require a holding that the 1917 tax was paid on or before July 1, 1917. If so *paid*, the money thus used could not thereafter be treated as a part of the taxpayer's invested capital for the succeeding year. The next sentence is inconsistent, in that it permits such taxes to "be included in computing surplus and undivided profits for the succeeding year" until "such taxes become due and payable." But, even if we assume no irreconcilable conflict between the two parts of this Treasury Decision, and that it is otherwise applicable in this case, the assumptions would not carry us to the conclusions reached by the court below. Certainly, this Treasury Decision is no more controlling than article 230, supra, which expressly provides that extensions for returns shall not extend the due date of payment. It follows that, if we take the regulations and decisions in the Treasury Department as our guide, we should reach the result that the Commissioner reached that the 1917 additional tax was due not later than December 15, 1917, 165 days from June 30, 1917. Doubtless this was "the due date" for the purpose of enforcing collection; but it does not follow that it was the due date for the purpose of computing the tax for the succeeding year.

On this record we are not called upon to determine whether the Commissioner thus made an unwarranted concession to the taxpayer; i. e., whether the tax for the year ending June 30, 1918, should have been computed on the real accrual basis, which would have required the additional tax of 1917 to be deducted at the end of the fiscal year 1917. The sole question before us (as before the court below) is whether the plaintiff may now treat this additional tax for 1917 as part of its average invested capital until it actually paid it on June 14, 1918. Cf. 3 F.(2d) 454.

But, as already indicated, whatever the import of the Treasury Regulations and Decisions, we cannot understand how, under the accrual theory, taxes deemed "to have been paid" in one period can thereafter be treated as unpaid, and therefore an asset, in a succeeding period. And our views in that regard are confirmed by the reasoning of the Supreme Court in United States v. Yale &

Towne Mfg. Co., 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347. The court below did not have the benefit of this decision, which was made on January 4, 1926, nearly a year after, on February 11, 1925, the instant case was decided by the learned District Judge.

In that case the company kept its books on the accrual basis, but contended that a munition tax for the year 1916, paid in 1917, should be deducted from its 1917 income, on the basis that it did not become an accruable liability until it was due and payable. The Commissioner contended, and assessed the tax on the ground, that the amount of the tax was a proper deduction for the year 1916. In affirming the position of the Commissioner, the Supreme Court said:

"Only a word need be said with reference to the contention that the tax upon munitions manufactured and sold in 1916 did not accrue until 1917. In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that, in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect for purposes of accounting and of ascertaining true income for a given accounting period, the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee's books. In the economic and bookkeeping sense, with which the statute and Treasury Decision were concerned, the taxes had accrued. It should be noted that section 13 (d) makes no use of the words 'accrue' or 'accrual,' but merely provides for a return upon the basis upon which the taxpayer's accounts are kept, if it reflects income, which is precisely the return insisted upon by the government. We do not think that the Treasury Decision contemplated a return on any other basis, when it used the terms 'accrued' and 'accrual' and provided for the deduction by the taxpayer of items 'accrued on their books.' "

Plaintiff urges that its contention is sustained by section 1207 of the Revenue Act of 1926 (44 Stat. 129), as follows:

"The computation of invested capital for any taxable year under the Revenue Act of 1917, Revenue Act of 1918, and the Revenue Act of 1921, shall be considered as having been correctly made, so far as relating to the inclusion in invested capital for such year of income, war profits, or excess profits taxes for the preceding year, if made in accordance with the regulations in force in respect of such taxable year applicable to the relation-ship between invested capital of one year and taxes for the preceding year."

[3] This is not so. Its return for the 1918 tax was due within 60 days of June 30, 1918, and T. D. 2791, relied upon as a "regulation" within the meaning of section 1207, was not issued until February 17, 1919. It was not (even if in terms applicable) "in force" when the tax for 1918 was required to be computed.

The decision below in effect allows the plaintiff to abandon, pro tanto, the accrual basis for the additional tax of 1917. This it cannot do.

The judgment of the District Court is reversed, with costs, and the case is remanded to that court for further proceedings not inconsistent with this opinion.