BOWERS, Collector, etc., v. MAX KAUFMANN & CO., Inc.

(Circuit Court of Appeals, Second Circuit. March 14, 1927.)

No. 170.

1. Internal revenue ⬤⇒9(27)—Demand notes, accepted by corporation in payment of stock, held "invested capital" for excess profits tax purposes; "bona fide payment" (Stock Corporation Law N. Y. §§ 67, 69; Regulation 45, art. 833; Revenue Act 1918, §§ 325, 326 [U. S. Comp. St. §§ 6336⅛sh, 6336⅛si⅄]).

In view of Stock Corporation Law (Laws N. Y. 1923, c. 787) §§ 67, 69, and Regulation 45, art. 833, promulgated by the Commissioner, demand notes, accepted by corporation for full price of capital stock, held "invested capital," within Revenue Act 1918, §§ 325, 326 (U. S. Comp. St. §§ 6336⅛sh, 6336⅛si), for purposes of computing excess profits tax, where notes were promptly paid from time to time as demands were made, and bank extended credit to corporation in reliance on such notes, and in absence of showing that sale was void or that transaction was in bad faith to avoid taxation; "bona fide payment," within said section 326, meaning actual, sincerely, and in good faith paid, and not requiring that money be legally paid in.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Capital Invested.]

2. Evidence ⬤⇒84—Notes given for stock subscription are presumed to have value equal to face value.

Notes given to corporation in good faith for stock subscription are presumed to be valid and enforceable, and to have actual value at least equal to their face value.

**3. Internal revenue ⊜9(27)—Corporation making return on accrual basis must deduct amount of accrued unpaid taxes from assets in following period for excess profits tax purposes (Revenue Act 1918, §§ 325, 326 [Comp. St. §§ 6336⅛h, 6336⅛i]; Regulation 45, art. 845).**

Under Revenue Act 1918, §§ 325, 326 (Comp. St. §§ 6336⅛h, 6336⅛i), and Regulation 45, art. 845, promulgated by the Commissioner, where corporation makes income tax return on accrual basis, accrued taxes treated as paid in one period, though not paid until during following period, must be deducted from the assets in following tax period for purpose of computing excess profits tax.

In Error to the District Court of the United States for the Southern District of New York.

Action by Max Kaufmann & Co., Inc., against Frank K. Bowers, as Collector. Judgment for plaintiff, and defendant brings error. Modified, and conditionally affirmed.

Emory R. Buckner, U. S. Atty., of New York City (Samuel C. Coleman, Asst. U. S. Atty., of New York City, of counsel), for plaintiff in error.

O'Brien, Malevinsky & Driscoll, of New York City (Joseph Walker Magrauth, M. L. Malevinsky and Robert H. Montgomery, all of New York City, and Thomas G. Haight, of Jersey City, N. J., of counsel), for defendant in error.

Before MANTON, HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge. For the taxable year 1918, the defendant in error paid $15,176.15, with interest as additional excess profits tax, under protest. It sued to recover this sum and was successful below. The defendant in error and its affiliated company, Hallukk Texstyle Corporation, both New York corporations, filed a consolidated return for that year. The basis of the suit for the return of the tax paid is the erroneous deduction by the Internal Revenue Commissioner of sums of money from its invested capital. Such reduction from invested capital caused an increase in the excess profits tax.

The defendant in error was capitalized for $50,000. It had four stockholders, who controlled all the stock, and they paid $11,190.34 in cash, and for the balance, as subscription to the capital stock, they gave their promissory notes, bearing interest, payable on demand. In July, 1918, the company issued $350,000 capital stock to the same stockholders and accepted in payment therefor demand notes, bearing interest, for the full amount. The Hallukk Corporation at the same time issued $99,000 of capital stock to the same individuals, and accepted in payment therefor demand notes for the full amount. Thereafter, from time to time, demand was made for payment of some of the notes and they were paid. In making the tax return in 1919 for the calendar year 1918, these notes were included in the invested capital for face value. The Commissioner excluded the amount of the unpaid notes. The reason given therefor was that, since they were New York corporations, their capital stock could not be issued for notes under the Stock Corporation Law of New York, and therefore the notes held and unpaid represented no part of the capital stock or the invested capital of the company.

An adjustment was made of the tax paid by defendant in error in 1918, when it paid $8,190.42 more on account of its income and excess profits tax for the year 1917. The Commissioner deducted this sum from invested capital.

Revenue Act 1918, §§ 325, 326, provided as follows:

"Sec. 325. (a) That as used in this title—

"The term 'intangible property' means patents, copyrights, secret processes and formulæ, good will, trade-marks, trade-brands, franchises, and other like property;

"The term 'tangible property' means stocks, bonds, notes, and other evidences of indebtedness, bills and accounts receivable, leaseholds, and other property other than intangible property;

"The term 'borrowed capital' means money or other property borrowed, whether represented by bonds, notes, open accounts, or otherwise. * * *

"Sec. 326. (a) That as used in this title the term 'invested capital' for any year means (except as provided in subdivisions (b) and (c) of this section)—

"(1) Actual cash bona fide paid in for stock or shares;

"(2) Actual cash value of tangible property, other than cash bona fide paid in for stock or shares, at the time of such payment, but in no case to exceed the par value of the original stock or shares specifically issued therefor, unless the actual cash value of such tangible property at the time paid in is shown to the satisfaction of the Commissioner to have been clearly and substantially in excess of such par value, in which case such excess shall be treated as paid-in surplus; * * *

"(3) Paid-in or earned surplus and undivided profits; not including surplus and undivided profits earned during the year; * * *

"(b) As used in this title the term 'invested capital' does not include borrowed capital. * * *

"(d) The invested capital for any period shall be the average invested capital for such period. * * *"

Comp. St. §§ 6336⅛h, 6336⅛i.

Regulation 45, article 833, promulgated by the Commissioner, referring to tangible property paid in, says:

"*Tangible Property Paid in; Evidence of Indebtedness.*—Enforcible notes or other evidences of indebtedness, either interest-bearing or non-interest bearing, of the subscriber received by a corporation upon a subscription for stock may be considered as tangible property in computing its invested capital to the extent of the actual cash value of such notes or other evidences of indebtedness at the time when paid in, but only (a) if such notes or evidences of indebtedness could under the laws of the jurisdiction in which the corporation was organized legally be received in payment for stock, and (b) if they were actually received by the corporation as absolute, and not as conditional, payment in whole or in part of the stock subscription."

[1] New York Stock Corporation Law (Laws N. Y. 1923, c. 787), § 69, provides that no corporation shall issue either shares of stock or bonds, except for money, labor done, or property actually received for the use and lawful purposes of such corporation. By its terms, stock may be issued for property actually received, and under section 325 of the Revenue Act of 1918 promissory notes are included as tangible property. The question is therefore presented whether the promissory notes, issued as described and in the manner described, are enforceable obligations under the New York law, so as to constitute tangible property under section 325. Section 67 of the New York Stock Corporation Law, referring to subscriptions to stock, requires every subscriber of stock to pay in ten per cent. of the amount subscribed by him and no subscription can be received without such payment. A subscription to stock has been held unenforceable in the state courts of New York, where such 10 per cent. in cash has not been paid. New York Co. v. Van Horn, 57 N. Y. 473; Mills v. McNamee, 111 Misc. Rep. 253, 181 N. Y. S. 285, affirmed 233 N. Y. 517, 135 N. E. 899.

The Court of Appeals said, in Buffalo & Jamestown Ry. v. Gifford, 87 N. Y. 294, that the precise purpose of this section is not apparent, but that in its absence the directors might be authorized to open books of subscription for the purpose of filling up the capital stock, but that it does not prohibit or forbid any other mode of subscription, and it was not perceived that any public policy would be subserved by holding that any subscription valid at common law is invalid in this section of the statute, and said: "we are inclined to the opinion that it was not intended by this section to prescribe a fixed statutory mode of making a subscription, and that any contract of subscription good or valid at common law is still valid, notwithstanding this section."

The same court later held that a trustee in bankruptcy could recover from subscribers to the stock the amount of their subscription, notwithstanding the fact that 10 per cent. of such amount was not paid at the time the subscription was required to be paid. Jeffrey v. Selwyn, 220 N. Y. 77, 115 N. E. 275, 6 A. L. R. 1111. In that case it was pointed out that, even if a subscription was invalid for want of such payment, it may become enforceable, not only by subsequent cash payment, but by a course of dealing between the corporation and its stockholders. Within that determination, the allegations of the complaint at bar show dealings between the stockholders and these corporations upon the basis that some stock had actually been paid for, and further that all of the demand promissory notes herein referred to were paid by the makers immediately upon payment being demanded.

In Furlong v. Johnson, 239 N. Y. 147, 145 N. E. 910, the same court said that the spirit, if not the letter, of the statute was satisfied when a subscriber gave to the corporation a negotiable instrument for 10 per cent. or more of the amount subscribed for, and the corporation obtained cash therefor by negotiation of the instrument. It is established here that the existence of the notes was made known to a bank, and that it extended credit to the defendant in error and its allied corporation on the strength of its statement that it possessed the notes, thus establishing a line of credit. Therefore the notes given for the stock and used by the defendant in error as invested capital produced actual cash (for which credit was given by the plaintiff in error). Such credit was granted on the faith of the acceptance of the notes.

[2] We think, within the sections of the Revenue Act referred to, defining what shall constitute invested capital, for the purpose of computing the amount of excess profits tax to be paid by these corporations, notes issued in good faith and paid for by the corporation

with its stock are property within the statute. The language of section 326, in ordinary and usual meaning in referring to bona fide payment, means actual, sincerely and in good faith paid. It is not necessary to hold that it means moneys legally paid in. If so, Congress would have used the phrase "legally paid in." Ware v. Hylton, 3 Dall. (3 U. S.) 199, 1 L. Ed. 568. It is necessarily implied that the notes had an actual value equal to their face value. There is a presumption that they are worth at least that much, in the absence of testimony to the contrary. They are presumed to be valid and enforceable. Where a note is given in good faith for stock subscribed, it is not enough to point to a possible defense, which might be interposed as between the parties in the event of a suit on the note between a corporation and the maker of the note.

To eliminate it as invested capital, it must be shown that the sale was void and not enforceable, or that the purchase of the stock and giving the note in payment was in bad faith and for the purpose of avoiding the provisions of the Tax Law. The defendant in error has established that, in arriving at its invested capital, and that of its affiliated corporation, for the purpose of taxation, it had the right to consider the face value of these interest-bearing demand notes, made by solvent makers in good faith, as part of its invested capital.

[3] The sum paid in 1918 for income and excess profits tax of 1917 was included in the invested capital by the defendant in error and its affiliated company. Under the statute, these taxes were not payable until 1918, and were paid during that year. In computing invested capital for 1918, the Commissioner adjusted these taxes as paid, deducting the amount of the 1917 taxes paid in 1918 from the invested capital of that year as and of the date when they were actually paid in. Regulation 45, article 845, promulgated by the Commissioner, reads:

"For the purpose of computing invested capital, federal income, and war profits and excess profits taxes are deemed to have been paid out of the net income of the taxable year for which they are levied. It is immaterial, therefore, whether reserves for the payment of such taxes for the preceding year have been set up or not, or if set up whether such taxes when paid have actually been charged against such reserves. Amounts payable on account of such taxes for the preceding year ·may be included in the computation of invested capital only until such taxes become due and payable. A deduction from the invested capital as of the beginning of the taxable year must therefore be made for such taxes or any installment thereof, averaged for the proportionate part of the taxable year after the date when the tax or installment is due and payable."

By its terms, corporations doing business in 1917 became obligated to the government for income and excess profits tax. These taxes were paid in 1918. At the end of 1918 it became necessary to compute the tax for that year, and for the purpose of excess profits tax to compute the invested capital of that year. The Commissioner permitted the tax period to include the amount paid as the tax in its invested capital for 1918 until the tax was actually due in 1918. After that date the amount of the tax was deducted from invested capital, prorating the amount over a period in which the tax had become due. This was upon the theory that the taxes were due and determined at the end of the year, and, if paid then, would have come out of the invested capital. But since the taxes were not paid at the end of the year, and the taxpayer retained the money for several months thereafter, he could include the amount in his invested capital until the due date. Therefore it was capital, so long as he had it in his possession.

This construction of the act has been approved, where the books were kept on an accrual basis. Nichols v. Sylvester Co. (C. C. A.) 16 F.(2d) 98. In that case it was held that the corporation, keeping its books on an accrual basis and making its returns accordingly, could not include in its invested capital for the fiscal year ending June, 1918, the amount of the federal income and excess profits tax for 1917 until the date of the payment of those taxes in 1918. It was pointed out that the taxes deemed to have been paid in one period could not, therefore, be treated as unpaid and an asset in a succeeding period, and the court cited as authority United States v. Yale & Towne Mfg. Co., 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347.

In that case, the Supreme Court considered a munition tax of 1916, paid in 1917. It was contended that the tax should be deducted from its 1917 income, upon the ground that it did not become an accrual liability until it was due and payable. The government contended that the amount of the tax was a proper deduction for the year 1916, and assessed a tax upon 1916 income upon that basis. It was pointed out that, while it is true that, in advance of the assessment of the tax, all the

events must occur which fix the amount of the tax and determine the liability of the taxpayer to pay it, it was said that in this respect, for the purpose of accounting and ascertaining true income from a given accounting period, the munition tax in question did not stand on any different footing than other accrued expenses appearing on the books. And it said:

"It should be noted that section 13 (d), Revenue Act 1916 (Comp. St. § 6336m), makes no use of the words 'accrue' or 'accrual,' but merely provides for a return upon the basis upon which the taxpayer's accounts are kept, if it reflects income, which is precisely the return insisted upon by the government. We do not think that the Treasury Decision contemplated a return on any other basis, when it used the terms 'accrued' and 'accrual' and provided for the deduction by the taxpayer of items 'accrued on their books.'"

It does not appear whether the defendant in error's books were kept on a cash or accrual basis. In the absence of proof as to this, we must infer, from the reference in the pleadings and action of the Commissioner, that they were kept on an accrual basis. Therefore the Yale & Towne Case applies, and the deduction of tax at the time they accrued from the invested capital would be proper.

In the view we take of the deduction of the 1917 taxes from invested capital for 1918, it becomes unnecessary to consider the effect of section 1207 of the Revenue Act of 1926 (44 Stat. 129).

Judgment reversed, unless the defendant in error stipulates to reduce the judgment to a sum which will make due allowance for the deduction from the invested capital of the 1917 taxes paid in 1918, and, with such stipulation and allowance made, the judgment will be affirmed, as thus modified, without costs.