## COMMISSIONER OF INTERNAL REVENUE
### v. JAMES.
### No. 161.

Circuit Court of Appeals, Second Circuit.

May 4, 1931.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, Andrew D. Sharpe, and S. Dee Hanson, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, of Washington, D. C., and R. N. Shaw, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., of counsel), for petitioner.

Robert E. Coulson, of New York City (Oscar W. Underwood, Jr., of Washington, D. C., and Henry Jaffe, of New York City, of counsel), for respondent.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

Respondent during 1918 owned a large block of stock in the Phelps Dodge Corpo-ration. He received a large sum through a distribution made by that corporation to its stockholders in 1918, and in his report for income tax he claimed the right to deduct from the earnings and profits available for distribution to stockholders, the federal income tax of the corporation. The petitioner claims the tax of the corporation ought not to be taken out as an expense until the end of 1918.

Section 201 of the Revenue Act of 1918 (40 Stat. 1059) expressly provides that distributions made to a stockholder by a corporation are taxable as dividend income to the stockholder only to the extent that they are paid from earnings and profits of the corporation accrued subsequent to February 28, 1913. Section 201 provides:

"(a) That the term 'dividend' when used in this title (except in paragraph (10) of subdivision (a) of section 234) means (1) any distribution made by a corporation, other than a personal service corporation, to its shareholders or members, whether in cash or in other property or in stock of the corporation, out of its earnings or profits accumulated since February 28, 1913, or (2) any such distribution made by a personal service corporation out of its earnings or profits accumulated since February 28, 1913, and prior to January 1, 1918.

"(b) Any distribution shall be deemed to have been made from earnings or profits unless all earnings and profits have first been distributed. Any distribution made in the year 1918 or any year thereafter shall be deemed to have been made from earnings or profits accumulated since February 28, 1913, or, in the case of a personal service corporation, from the most recently accumulated earnings or profits; but any earnings or profits accumulated prior to March 1, 1913, may be distributed in stock dividends or otherwise, exempt from the tax, after the earnings and profits accumulated since February 28, 1913, have been distributed. * * *

"(e) Any distribution made during the first sixty days of any taxable year shall be deemed to have been made from earnings or profits accumulated during the preceding taxable years; but any distribution made during the remainder of the taxable year shall be deemed to have been made from earnings or profits accumulated between the close of the preceding taxable year and the date of distribution, to the extent of such earnings or profits, and if the books of the corporation do not show the amount of such

earnings or profits, the earnings or profits for the accounting period within which the distribution was made shall be deemed to have been accumulated ratably during such period."

■ The Board found that the earnings and profits of the taxable year, after the deduction of federal taxes for the taxable year, should be prorated to each distribution date to determine the amount of actual earnings and profits available for distribution to stockholders on such day, and the contention of the Commissioner, presented on this appeal, is not that the earnings or profits available for distribution to stockholders are to be determined without deducting federal income tax of the corporation, but only that the federal taxes of the corporation ought not to be taken out as an expense until the end of 1918. In employing the phrase "earnings and profits" in section 201, we think Congress intended the use of the term in the ordinary accounting understanding, and, by that practice, a corporation cannot be expected to have calculated any net income in any year until provision is made for taxes accrued and payable to the United States based on net income for the same year. Montgomery & Stout Accounting Principles 1923, p. 308. The Phelps Dodge Corporation and its subsidiary at all times and including the year 1918 kept their books of accounts and rendered their tax returns upon the accrual basis of accounting, and consistently at all times accrued upon such books of account for each calendar year, including 1918, all taxes for the year, which included the federal income and excess profits taxes imposed on the basis of the earnings of such calendar year, although such taxes were not payable until the succeeding calendar year; and, in determining their earnings and profits available for distribution to stockholders for each calendar year, they deducted, as an expense of operation, the federal income and excess profits taxes accruing on account of such operation for such calendar year, even though not paid until the succeeding calendar year. The Board of Tax Appeals, in interpreting section 201, recognized this principle of accounting, and it is admitted to have been the consistent practice of the Commissioner. Regulation 45, art. 1542. Such statutory construction by the Commissioner, an administrative authority charged with the enforcement of the statute, has given it a practical interpretation and therefore created weighty reasons for following such long-continued administrative construction. Brew-

ster v. Gage, 280 U. S. 327, 50 S. Ct. 115, 74 L. Ed. 457; Edwards v. Wabash R. Co., 264 F. 610 (C. C. A. 2). Moreover, the Board has thus adopted the principles of accrual accounting approved in United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347. See Bowers v. Max Kaufmann & Co., 18 F.(2d) 69 (C. C. A. 2). As the Anderson Case would indicate, the true income for the year 1918 could not have been determined without deducting from the corporation's gross income for the year the total costs and expenses attributable to the production of that income during that year, and a reserve for income taxes set up in the books for the year must be deducted from the gross profits for the year before the net results of operation can be ascertained. The tax does not stand on any different footing from other accrued expenses appearing on the taxpayer's books.

What the Commissioner was concerned with was the ascertainment of the real earnings and profits of the Phelps Dodge Corporation, which were available for distribution to stockholders on the date of each distribution. Since the earnings and profits to each of the dates of distribution were unknown, the Commissioner was compelled to ascertain the available earnings and profits for the entire year and prorate them. Fawcus Machine Co. v. United States, 282 U. S. 375, 51 S. Ct. 144, 75 L. Ed. ——, involved a determination of invested capital in connection with the excess profits taxes, and in that determination the Supreme Court gave support to the principles of accrual accounting in so far as they apply to the income and excess profits taxes for the year 1918.

■ But the petitioner argues that, while it is true that a corporation keeping its books on an accrual basis cannot be said to have accumulated true income until taxes for the period are deducted, the taxable income of the Phelps Dodge Corporation could not be determined until the end of 1918, and its taxes would not be known until then. The petitioner then says that the income before the deduction of taxes should be prorated to the distribution dates, but that earnings and profits, after deducting taxes, should not be prorated, although in each case the amounts can only be determined at the end of the year. Income taxes, when determined at the end of the taxable period, can and should be prorated to a date within the taxable year. Rouss v. Bowers, 30 F.(2d) 628 (C. C. A. 2); Edwards v. Douglas, 269 U. S. 204, 46 S. Ct. 85, 70 L. Ed. 235; Mason v. Rout-

zahn, 275 U. S. 175, 48 S. Ct. 50, 72 L. Ed. 223. These cases recognized that undivided surplus and profits can only be determined after federal income tax for the period had been deducted.

Nor do we think the invested capital cases [Commissioner of Internal Revenue v. Pittsburgh Knife & Forge Co., 30 F.(2d) 522 (C. C. A. 3), and Blair v. W. G. Ragley Lumber Co., 30 F.(2d) 683 (C. C. A. 5)] require a different rule from that adopted by the Board in construing section 201 of the 1918 act (40 Stat. 1059). For in such construction, the question is presented of how much the corporation has available, at the time of its various distributions to stockholders, representing earnings and profits accumulated since February 28, 1913. In that determination it is necessary to deduct the expense of taxes. The amount available for distribution periods throughout the year then becomes known. At bar the taxable income before distribution of taxes and the earnings and profits after distribution of taxes were fixed definite amounts, and the prorating consisted merely of dividing the available income and profits for the year by 365 and treating as available on the date of each dividend distribution an amount arrived at by multiplying 1/365 of the total by the number of days between January 1, 1918, and the date of such dividend distribution. Having regard for the method of bookkeeping and pursuing this principle, the Commissioner in no sense would be dealing with a tentative tax, but rather with the actual tax. On the other hand, the invested capital computations used in the excess profits tax cases estimated a tentative tax and prorated. This was made the basis of reduction in those cases, and the reduction in invested capital necessarily resulted in a change of tentative or estimated taxes.

The tax was properly deducted by the Board.

A question is submitted by the petitioner, but not argued, as to the treatment of sums paid by Moctezuma Copper Company to the Phelps Dodge Corporation during 1918. The 1918 earnings of the Phelps Dodge Corporation included dividends received from this corporation, and the Board included as profits from this item the amount of $2,688,-370.71. This was part of the total distribution by that subsidiary to the Phelps Dodge Corporation which was paid from earnings and profits during the year 1918 and earnings and profits accumulated since February 28, 1913. It excluded the sum of $431,629.29

paid from sources other than earnings and profits accumulated since February 28, 1913. The Board affirmed the exclusion of this item of $431,629.29 in computing the 1918 earnings and profits of the Phelps Dodge Corporation. This was in conformity with the provisions of article 1543, Regulation 65, promulgated by the Commissioner. It provides that, where one corporation receives from another distributions out of earnings or profits accumulated by such other corporation prior to March 1, 1913, or out of an increase in capital, of its property accrued prior to March 1, 1913, and the receiving corporation, after having first distributed all the earnings accumulated since February 1, 1913, distributes to its shareholders the amounts so received by it from such other corporation, the distribution by the receiving corporation to its shareholders is not a dividend within the meaning of title II, and is exempt from tax.

We need not decide the question of the legality of this ruling. The Commissioner does not wish to argue it, and the taxpayer is content with the result.

Order affirmed.