# DAILY PANTAGRAPH, Inc., v. UNITED STATES.

Court of Claims.  June 10, 1929.

No. F–88.

Arnold L. Guesmer, of Minneapolis, Minn., for plaintiff.

J. H. Sheppard, of Washington, D. C., and Herman J. Galloway, Asst. Atty. Gen., for the United States.

Argued before BOOTH, Chief Justice, and GRAHAM, SINNOTT, and GREEN, Judges.

GREEN, Judge. The defendant sets up objections to the jurisdiction of the court in this case, both as to the whole thereof and especially to some specific portions. It will be necessary to first consider these objections.

It is urged on behalf of the defendant that taxes paid for the years 1917 and 1918 may not be recovered because plaintiff was granted a special assessment for those years, and it is also asserted in argument that plaintiff was accorded and accepted the benefits of the application of the special assessment provisions of the Revenue Acts of 1917 and 1918. We do not think this contention is well founded.

■ Plaintiff was granted a special assessment for the years 1917 and 1918, and this resulted in an overassessment of $4,067.78 for the fiscal year ending October 31, 1917, an overassessment of $2,741.99 for the 2-month period of November and December, 1917, and a deficiency of $11,724.97 for the calendar year 1918. The overassessments for the 14-month period ending December, 1917, were credited against the deficiency for the calendar year 1918, and the balance of $4,-915.20 was paid by the plaintiff on July 26, 1921. If this were all on this point, the decision in the case of Williamsport Wire Rope Co. v. United States, 277 U. S. 551, 48 S. Ct. 587, 72 L. Ed. 985, might possibly be conclusive as against the plaintiff; but subsequently the Commissioner sent plaintiff a 60-day letter dated March 14, 1925, giving his final determination of tax liability of the plaintiff, which was based on the taxpayer's statutory capital instead of the special assessment hereinabove referred to and which resulted in an overassessment of $2,639.18 for the year 1917 and a deficiency tax amounting to $3,243.33 for the year 1918 instead of the amounts which had heretofore been determined by him under the provisions for special assessment. There is nothing in the evidence to show that the defendant attempted to collect the deficiency so assessed for the year 1918, nor is there anything to show that the plaintiff ever asked for the special assessment. The mere fact that plaintiff paid the amount which was demanded by defendant after the special assessment and before the deficiency letters were sent does not show an acceptance by the plaintiff of the rulings of the Commissioner under the special assessment provisions. In fact, neither party seems to have rested its case on these proceedings, and we think there was nothing in connection therewith which would prevent the plaintiff from maintaining this suit with reference to the alleged overpayment for the years 1917 and 1918.

■ Counsel for defendant contend that the statute of limitations has run against the claims for refund of taxes paid for the years 1917 and 1919 and a portion of the year

1918, for the reason that plaintiff's claims for refund thereof have not been rejected. With reference to these refunds, the Commissioner of Internal Revenue wrote certain letters to plaintiff, in each of which he said: "Your claims will be rejected." Counsel for defendant argue that this expression referred to the future and not to the time of sending the letters, but we think this language would be understood to mean that the Commissioner had definitely rejected the claim for refund referred to respectively in the letters.

It is also contended on behalf of the defendant that this court has no jurisdiction to entertain this suit, because at the time that the plaintiff's petition was filed an action involving some or all of the same matters was pending before the Board of Tax Appeals. The evidence shows that the plaintiff filed a petition appealing from certain deficiencies for 1919, 1920, and 1921, asserted by the Commissioner of Internal Revenue in a letter of March 14, 1925. The case was tried by the board on November 16, 1925, and the 1926 Revenue Act therefore has no application. It may be that, while plaintiff's petition and action were pending before the Board of Tax Appeals, it had no right to bring a suit in this court, including any of the matters involved therein, but the proceedings before the Board of Tax Appeals have reached a final determination. We do not find it necessary to determine whether, when plaintiff's petition was filed in this case, defendant might have successfully demurred thereto on the ground of the pendency of the proceedings before the Board of Tax Appeals. It is sufficient to say that we think that, the proceedings before the Board having ended, the plaintiff is now in a position to maintain this suit, and should not be required to go through the useless proceedings of filing a new petition. The objections of defendant to the jurisdiction of the court are therefore overruled.

Coming now to the merits of the action, it will be found that the facts in the case are not in dispute, and are clearly set forth in the findings. The parties have agreed that, when the court decides the issues of law, they will present to the court an appropriate finding containing proper tax computations based on the court's construction of the law. This renders it unnecessary that we should state anything more of the facts in the opinion than such as are necessary to an understanding of the questions of law which are to be decided.

I. The first question arises over the action of the Commissioner in refusing to allow the plaintiff to include in its invested capital the value of its circulation. It appeared that, when the plaintiff was organized as a corporation and took over the business of publishing a newspaper, nothing was paid the former owners for the circulation, which was actually worth $142,000. The question is whether plaintiff had the right to include in its invested capital the value of this circulation thus gratuitously received.

Section 326, both of the 1918 (40 Stat. 1092) and 1921 Revenue Acts (42 Stat. 274), defines and limits the words "invested capital," as used in the law, and, as a distinction is made therein between tangible and intangible property, it becomes necessary to determine whether circulation or circulation structure is tangible or intangible property.

We have no doubt that it is intangible property. It is something that goes with every newspaper or periodical, and yet it cannot be touched or perceived, although it may be described and to a certain extent specified. The contention on the part of plaintiff is that, because its value can be ascertained, it is in fact a tangible asset, but this feature pertains to most intangible property. Section 325 of the acts of 1918 (40 Stat. 1091) and 1921 (42 Stat. 273) provides that "intangible property" "as used in this title" (invested capital) means, among other things, "good will * * *. and other like property." Circulation is very much in the nature of good will. Its amount and value depend entirely on how attractive a publication is to the public, and whether they have such an opinion in regard to it that they are likely to continue their subscriptions and their advertising. Unlike tangible property, it cannot be parted or divided. It has all the characteristics that belong to other intangible property.

The section of the Revenue Acts of 1918 and 1921 before referred to. (section 326) provides in substance that "intangible property bona fide paid in for stock or shares" may be included in invested capital under certain limitations and to a certain extent. Under well-known rules of construction, the inclusion of intangible property paid in for stock or shares would exclude that which was not paid in for such purpose, unless there was something in the context to indicate a different construction. An examination of the section tends rather to support the application of the rule. Strict limitations are placed by the statute upon the extent to which intangible property "paid in for stock or shares" may be included in invested capital. In no event can it be more than "(a) the actual cash value of such property at the

time paid in, (b) the par value of the stock or shares issued therefor, or (c) in the aggregate 25 per centum of the par value of the total stock or shares of the corporation outstanding, * * * whichever is lowest." The plaintiff contends that, as subdivision 3 of the section under consideration provides for the inclusion of "paid-in or earned surplus and undivided profits," this provision would include circulation value as a part thereof. Possibly by itself and alone this language might be so construed, but, if the contention of the plaintiff should be sustained, the effect is to hold that Congress carefully limited the extent to which intangible property actually paid for stock could be included in invested capital, but placed no limitations whatever on intangible property gratuitously received, which would under this contention have to be included in invested capital at its full value, while the amount of intangible property which was actually used as a payment could not exceed 25 per centum of the par value of the total amount of stock of the corporation. We do not believe that Congress so intended, and, in arriving at this conclusion, we are guided not simply by the fact that this result would be absurd. When Congress provided that intangible property paid in for stock might be included in invested capital, and went on further to specify the extent and limitation thereof, if it had intended that property gratuitously received might also be included, it would not merely have so specified, but it would have gone on to fix the limit and extent to which it could be so included in the same manner as it did with intangible property actually paid in for stock. This would be the natural, ordinary, and usual course. We conclude that the maxim expressio unius est exclusio alterius applies, and subdivision 3 was not intended to include in invested capital intangible property gratuitously received. The Board of Tax Appeals has in a number of cases consistently adhered to this construction of the law, and, in accordance with the views above expressed, we hold that plaintiff is not entitled to include in its invested capital the value of its circulation. It is true that in this particular case the application of this rule produces an inequitable result as compared with a similar case, where the value of the circulation had been treated as a payment for stock, but it should be always borne in mind that it is utterly impossible for Congress to adjust taxes so as to equalize all of the myriads of different cases which may arise. Some inequalities will always exist, and, in the taxes which are most commonly and universally applied,

they are very numerous, and in some instances gross. The case presented by plaintiff is a very unusual one. Possibly, if it had been considered by Congress that such a case could ever occur, it would have provided for it; but it did not, and we can only administer the law as we find it.

■ II. During the years involved, the plaintiff's books were kept and its returns made on an accrual basis. The federal income and profits taxes were not accrued on its books, and were not entered thereon until paid, and were then entered in the amounts paid. The Commissioner, in computing invested capital for a given year, deducted from the amount of the invested capital at the close of the preceding year the amount of income and profits taxes for such preceding year. The question is whether this action was in accordance with law.

We have already passed on this question in American Bronze Powder Manufacturing Co. v. United States, 67 Ct. Cl. 564, and held that the action of the Commissioner was proper. This decision was made on the authority of United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347, and we would not consider it necessary to again consider it if a contention was not made in argument that a rule is laid down in United States v. Woodward, 256 U. S. 632, 41 S. Ct. 615, 65 L. Ed. 1131, which is contrary to the opinion expressed in the American Bronze Powder Manufacturing Co. Case, supra.

In the Anderson Case, supra, it is said:

"In a technical legal sense it may be argued that a tax does not accrue until it has been assessed and becomes due; but it is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect, for purposes of accounting and of ascertaining *true income for a given accounting period,* the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee's books. In the economic and bookkeeping sense with which the statute and Treasury decision were concerned, the taxes had accrued." (Italics ours.)

It is true that in the Woodward Case, supra, where the estate tax was being considered, language was used which seems to have been understood by some as meaning that a tax accrued in the year in which it was paid, but this language was explained and qualified in the case of United States v. Mitchell, 271 U. S. 9, 46 S. Ct. 418, 70 L. Ed. 799, and also

in the Anderson Case. In both of these cases it was shown that the question of when a tax accrued was not before the court in the Woodward Case, and that the opinion rendered therein did not pass upon that question. Counsel for plaintiff is a little unfortunate, to say the least, in quoting from the Anderson Case what the court says with reference to the Woodward Case.

The court said: "It did not appear whether, as here, the taxpayer kept his books on the accrual basis. * * * "

In quoting from the Anderson Case the sentence in which this language appears, counsel omits it, although it is controlling on the question to be decided herein as the books in the case at bar were kept on the accrual basis.

It is argued on behalf of plaintiff that in the Anderson Case and the Yale & Towne Mfg. Co. Case, which were decided together, the munitions tax and not the income and profits tax was involved; and that the munitions tax could be computed and ascertained in the year for which it was levied, while the income and profits tax cannot. There are two reasons why this argument is not tenable: First, that the munitions tax could not be exactly computed until the taxable year was completed and over; and the other and perhaps more conclusive reason is that the Supreme Court did not base its decision upon any such premise, but stated, as above recited, that "the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee's books," which accrued expenses, where books were kept on the accrual basis, as in the instant case, would be charged at the different times in the year when they arose.

In the case of Nichols, Collector, v. Sylvester Co. (C. C. A.) 16 F.(2d) 98, it was held, following the doctrine of the Anderson Case, that, where the corporation kept its books on an accrual basis, the munitions tax for the year 1916, paid in 1917, was a proper deduction for the year 1916; and in Bowers, Collector, v. Max Kaufmann & Co. (C. C. A.) 18 F.(2d) 69, the rule of the Anderson Case was applied to the taxes for 1917, due and payable in 1918. The Bowers Case involved the excess-profits tax.

It should be carefully kept in mind that the point here discussed is exactly the same as that involved in the Anderson Case, namely, whether, when a corporation keeps its books on the accrual basis, in computing the taxes for a given year, the taxes of the previous year should be deducted in ascertaining the amount of invested capital, and the Supreme Court held that such a deduction should be made. The nature of the facts also is exactly the same, with one exception. In the Anderson Case the taxpayer "deducted from gross income all the items appearing on its books as losses sustained and obligations and expenses incurred during the year," and likewise carried on its books as an obligation or expense a "reserve for munitions taxes" for 1916, being the year for which such taxes were imposed, but in making up its return for 1916 the taxpayer omitted to return the item of the munitions tax. In the case at bar the plaintiff keeping its books on the accrual basis followed the same plan, except that the federal income and profits taxes were not accrued on its books, and were not entered until they were paid. The argument of plaintiff seems to be based on the theory that plaintiff's income for taxing purposes should be computed on the cash receipts and disbursements basis. This argument seems strange in view of the fact that the plaintiff not only kept its books on an accrual basis, but *made its returns on an accrual basis.* It took credit on its books, not only for items actually received, but also for credits which had accrued, although they were payable in the future. Having thus received the benefit of credits which had accrued, the plaintiff should also deduct the amount of obligations which had been incurred. In our opinion, the plaintiff could not keep its books as to everything except taxes on the accrual basis and then refuse to have its taxes adjusted on that basis because it omitted to enter them on the books until paid, nor could it make a return on an accrual basis as it undertook to do without including its accrued taxes. We think it clear under the holding made in the Anderson Case that the Commissioner was right in deducting the income and profits taxes of the previous year in order to ascertain invested capital of any given year; the plaintiff having kept its books on an accrual basis.

III. In determining the amount of income available for the payment of dividends paid after the first 60 days of a given year, the Commissioner reduced the net available income earned from January 1st of the given year to the extent of the pro rata amount of federal income and profits taxes for that year which he held had accrued up to the date of dividend payment. The question is whether this action of the Commissioner was correct.

This identical question has now been passed upon by this court in three cases, and in all of them the conclusion was adverse to the contention of plaintiff. These cases are

Franklin D'Olier et al. v. United States, 61 Ct. Cl. 895; Child and Fullerton v. United States, 63 Ct. Cl. 356; and American Bronze Powder Mfg. Co. v. United States, 67 Ct. Cl. 564.

The D'Olier Case, supra, was decided on the authority of United States v. Anderson, supra, and the opinion therein expressly so stated. The plaintiff applied for a certiorari, and his application was denied. The Child and Fullerton Case was abandoned on the denial of certiorari in the D'Olier Case. We are aware that there are decisions to the contrary by other courts, and that the Board of Tax Appeals has also held consistently to the contrary, but only by reversing the decisions of this court in the three cases named above and holding contrary to a doctrine which we consider has been approved by the Supreme Court could we reach a conclusion that the action of the Commissioner was erroneous and wrongful. It is true that the opinion in the D'Olier Case merely stated that it was made on the authority of the Anderson Case, but the statement of facts and the point involved were made so clear that it was hardly possible that the issue be misunderstood. In the American Bronze Powder Mfg. Co. Case, supra, we have set out at length our reasons for holding that, where the books were kept on an accrual basis, the Commissioner was authorized to deduct the amount of the tentative tax for the year in which the tax was imposed in order to ascertain the amount available for dividends, and in the last-named case we quoted as determinative of the question before the court a statement made in the Anderson Case, as follows:

"The appellee's true income for the year 1916 could not have been determined without deducting from its gross income for the year the total cost and expenses attributable to the production of that income during the year."

It appears to us there can be no question but that the taxes imposed for any given year are a part of the cost and expenses attributable to the production of income during the year. In fact, no one would dispute but that every going concern includes taxes as a part of its cost and expenses. The question here is as to when the taxes should be deducted, and, following the Anderson Case, we hold that the only way to find the plaintiff's true income for a given year was to deduct the estimated amount of the tax.

In the Anderson Case also a treasury decision was approved under which it was permissible for "corporations which accrue on their books monthly or at other stated periods amounts sufficient to meet fixed annual or other charges to deduct from their gross income the amounts so accrued, *provided such accruals approximate as nearly as possible the actual liabilities for which the accruals are made*, and provided that in cases wherein deductions are made on the accrual basis as hereinbefore indicated, *income from fixed and determinable sources accruing to the corporations must be returned, for the purpose of the tax, on the same basis.*" (Italics ours.)

Objections have been made to the method adopted by the Commissioner on the ground that it was complicated, and it has been compared with an "algebraic formula." We have had occasion to apply the method in several cases. It has its complications, but no more we think than those caused by some other provisions of the law with reference to the excess-profits tax which has been repealed for several years. Regardless of the complications, if it is in accordance with law, we should apply it. In this connection it ought to be said that Edwards v. Slocum, 264 U. S. 61, 44 S. Ct. 293, 68 L. Ed. 564, has no application. In that case the government was seeking to apply the estate tax by a very complicated method to what the Supreme Court held was not the net estate, and which the court held included a portion of the estate not subject to the tax. No such question arises in the instant case.

It is also said that the method is unfair to the taxpayer who happens to keep his books on the accrual basis, but, when the taxpayer has been receiving benefits in the way of including accrued credits and earnings out of which dividends might be paid, we are unable to see why taxes which have accrued, should not be deducted pro rata and think this is only fair to the government.

The parties having agreed that they will present to the court a computation of the amount to which plaintiff is entitled under the conclusions of law expressed in the opinion of the court and the undisputed facts in the case, an opportunity will be given to present to the court such a computation for the purpose of having judgment entered herein in accordance with the opinion.

### Conclusion of Law.

Upon the special findings of fact which accompanied the opinion heretofore rendered in this case, which findings of fact are made part of the judgment herein, and in accordance with the said opinion, the court decides, as a conclusion of law, that the plaintiff is entitled to recover the sum of $3,697.04, with interest as provided by law.

It is therefore ordered and adjudged that the plaintiff recover of and from the United

States the sum of $3,697.04, with interest at the rate of 6 per cent. per annum computed as follows:

On $3,460.18 of the amount so recoverable from June 15, 1918; on $236.86, being the balance recoverable, from August 19, 1922; and on both of said sums up to such date as the Commissioner of Internal Revenue may determine, in accordance with the provisions of subsection (b), section 177, of the Judicial Code (45 Stat. 877, § 615; 28 USCA § 284[b]), being a part of the Revenue Act of May, 1928.

BOOTH, Chief Justice, and SINNOTT, Judge, concur.

GRAHAM, Judge, took no part in the decision of this case; and MOSS, Judge, took no part on account of illness.