### SAVANNAH BANK & TRUST CO. et al. v. UNITED STATES.

No. M–316.

Court of Claims.

May 31, 1932.

Francis R. Lash, of Washington, D. C., for plaintiffs.

John A. Rees, of Washington, D. C., and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

LITTLETON, Judge.

Plaintiffs sue to recover $3,637.80 paid April 21, 1925, as interest on a portion of an additional tax for the calendar year 1916, which additional tax was assessed by the commissioner July 28, 1919, and paid May 1, 1923, after consideration and rejection by the commissioner of the decedent's claim for abatement filed October 13, 1919.

Plaintiffs claim that the interest sued for was collected after the period of limitation within which collection thereof could lawfully be made and constitutes an overpayment within the purview of section 607 of the Revenue Act of 1928, and that section 611 of that act (26 USCA §§ 2607, 2611) is not applicable and does not bar recovery.

The defendant demurs to the petition on the ground, first, that the suit was not instituted within two years of the disallowance of the claim for refund; and, secondly, that section 611 of the Revenue Act of 1928 precludes recovery of the interest sued for.

The decedent, George P. Walker, duly filed his income-tax return for the calendar year 1916 on February 24, 1917, showing a total tax liability of $3,327.62, which was duly assessed by the commissioner May 17, 1917, and paid May 24, 1917.

Thereafter, on July 28, 1919, the commissioner discovered that the return filed for 1916 was erroneous, made the necessary corrections thereon, and assessed an additional tax of $66,850.40. October 13, 1919, the decedent paid $49,930.40 of the additional assessment to the collector under protest and on the same date filed a claim for the abatement of the balance of $16,920.

Thereafter the commissioner examined, considered, and audited the abatement claim filed and on April 6, 1923, rejected the claim and notified the decedent thereof by letter. Thereafter, on April 18, 1923, the decedent received notice and demand from the collector for the payment of $16,920, being the balance of the additional tax theretofore assessed and covered by the abatement claim which had been rejected, plus interest thereon in the amount of $7,614 at the rate of 1 per cent. per month for a period of forty-five months. May 1, 1923, the decedent paid the balance of the additional assessment of $16,920 under protest and on the following day filed with the collector a claim asking that the interest of $7,614 demanded be abated.

The amount of interest so computed by the collector, and included in his notice and demand, being erroneous, was thereafter recomputed by him in the correct amount of $3,637.80. The last-mentioned amount of interest was assessed by the commissioner on his May, 1923, list on August 22, 1923. The commissioner considered the claim filed by the decedent for the abatement of the interest and in March, 1925, rejected the same in its entirety. He did not mail to the decedent a written notice of his action rejecting the claim. He notified the decedent that the interest in the amount of $3,637.80 must be paid and the decedent paid the same April 21, 1925.

The commissioner did not at any time subsequent to June 1, 1924, mail to the decedent a notice under sections 274(a) and 280 of the Revenue Act of 1924 (26 USCA §§ 1048 note, 1064 note), of a determination of a deficiency in tax for 1916 or a notice of a determination with respect to interest on any tax for the year 1916.

George P. Walker died June 9, 1927. The Savannah Bank & Trust Company and

Robert W. Groves qualified as executors under the will of the decedent and were granted letters testamentary c. t. a. by the court of ordinary at Savannah, Ga.

April 19, 1929, the executors, acting through a duly appointed and designated attorney in fact, filed a claim for refund, Form 843, for and on behalf of the estate of the decedent, asking for the refund of the additional tax theretofore paid and, likewise, for the refund of the interest of $3,637.80 paid thereon. The basis of the claim was "that the additional tax and/or interest for the taxable year 1916 was assessed and/or collected at a time when the commissioner was without a legal right so to do; or, at a time when the assessment and/or collection was barred by the statute of limitations applicable thereto."

July 31, 1929, the commissioner advised the estate of the decedent that: "Your claim for refund will, therefore, be rejected in full. The rejection of the claim will officially appear on the next schedule to be approved by the commissioner."

August 22, 1929, the commissioner advised the attorney in fact for the estate of the decedent that the "rejection of the claim was scheduled on August 9, 1929."

Until recently it was not the regular practice of the Commissioner of Internal Revenue to prepare and sign a schedule of rejection claims in every case.

The petition in this case was filed August 8, 1931.

The first point made by the defendant is that for the purpose of computing the period of two years within which suit may be instituted after the disallowance of a claim for refund, the letter of the commissioner of July 31, 1929, advising the plaintiffs that "Your claim for refund will, therefore, be rejected in full," must be taken as the date of disallowance rather than the date of August 9, 1929, on which the official schedule disallowing the claim was signed and approved by the commissioner. If the claim was disallowed within the meaning of section 3226 of the Revised Statutes, as amended (26 USCA § 156) on July 31, 1929, this suit was barred at the time the petition was filed. If the disallowance occurred when the official schedule of rejection was signed and approved by the commissioner on August 9, 1929, the suit was timely instituted. We are of opinion that when the commissioner signs and approves a schedule of rejection of claims he thereby disallows the claim

within the meaning of section 3226, as amended. It is not compulsory that the commissioner sign such a schedule before a claim can be regarded as disallowed. The date on which a particular claim is disallowed for the purpose of computing the two-year period provided in section 3226 of the Revised Statutes for the institution of suit must be determined upon the facts in each case. If it is shown that the commissioner signed a schedule of rejection, the date on which such schedule is approved must be taken as the date of disallowance. If such schedule is not issued, the claim is disallowed on the date on which the taxpayer is notified by the commissioner's office of the action taken thereon. In such case it is immaterial whether the notification of the disallowance concludes with the statement, "Your claim will, therefore, be rejected," or the statement, "Your claim is rejected." Royal Bank of Canada v. United States, 44 F.(2d) 249, 70 Ct. Cl. 663. The signing of the official schedule of rejection usually, if not always, occurs on a date subsequent to the date on which the taxpayer is first notified of the conclusions reached by the Bureau of Internal Revenue. It appears that it was not the practice of the Commissioner of Internal Revenue until recently to sign an official schedule of rejection in every case in which a claim had been filed. In Daily Pantagraph v. United States, 37 F.(2d) 783, 68 Ct. Cl. 251, and New England Mutual Life Insurance Co. v. United States, 52 F.(2d) 1006, 72 Ct. Cl. 658, this court held that the claims for refund under consideration were rejected by the commissioner's letter notifying the particular taxpayers that, "Your claim will be rejected." It did not appear in those cases that the commissioner signed an official schedule of rejection. The contention made by the government in the Daily Pantagraph Case and by the plaintiff in the New England Mutual Life Insurance Company Case was that a written notification by the commissioner to the taxpayer stating that, "Your claim will be rejected," could not constitute a disallowance of the claim within the meaning of section 3226 of the Revised Statutes, as amended. The court correctly held in both cases that the claims in question were rejected by the commissioner.

The record in this case shows that the official schedule rejecting plaintiffs' claim for refund was signed and approved by the commissioner on August 9, 1929. This suit was therefore timely instituted.

The second ground of the demurrer is

that plaintiffs are precluded by section 611 of the Revenue Act of 1928 (26 USCA § 2611) and the decision in Graham & Foster v. Goodcell, 282 U. S. 409, 51 S. Ct. 186, 195, 75 L. Ed. 415. We are of opinion that the demurrer is well taken on this ground and must be sustained. In Graham & Foster v. Goodcell the court said: "In some of the cases under review, it is insisted that section 611 does not preclude the recovery of interest, upon the ground that the interest had not been assessed and therefore lay outside the prohibition of the statute. But it does not appear that there was any statutory requirement that interest as such should be assessed, and the valid denial of the right to recover the principal should be deemed to apply also to the interest." The interest involved in this case is that imposed by the Revenue Act of 1916 and subsequent revenue acts for delayed payment of a tax ten days after notice and demand therefor by the collector. The statute provides that "to any sum or sums due and unpaid * * * for ten days after notice and demand thereof by the collector, there shall be added * * * interest at the rate of one per centum per month upon said tax from the time the same became due. * * *" The Revenue Act of 1916 and subsequent revenue acts did not require the assessment by the commissioner of interest of this nature, nor was the commissioner required by section 280 of the Revenue Act of 1924 to mail a taxpayer a notice of his determination of such interest under section 274 of that act. Such interest was not a "deficiency" as defined by the 1924 Revenue Act.

Plaintiffs further contend that assessment and collection of the additional tax for 1916 were barred by the provisions of section 9(a) of the Revenue Act of 1916 (39 Stat. 763) at the time it was assessed, Stange v. United States, 282 U. S. 270, 51 S. Ct. 145, 75 L. Ed. 335; Aiken v. Burnet, 282 U. S. 277, 51 S. Ct. 148, 75 L. Ed. 339; Brown & Sons Lumber Co. v. Burnet, 282 U. S. 283, 51 S. Ct. 140, 75 L. Ed. 343; that collection of interest thereon was likewise barred; and that although the Revenue Act of 1921 (section 250(d), 42 Stat. 265) provided for assessment and collection within five years after the return was due or was made, the additional tax theretofore assessed and the interest here in question were not collected until after the expiration of the five-year period. But collection of the tax beyond the date when it could lawfully have been collected under the five-year limitation provision of the revenue act of 1921 was stayed by the abatement claim which the decedent filed. Under the decision of Graham & Foster v. Goodcell, supra, section 611 bars the recovery of the interest collected after the expiration of the statutory period of limitation upon the tax, the collection of which was stayed by the claim for abatement. Plaintiffs contend that the decision in Goodcell is not controlling for the reason that in this case the commissioner assessed the interest after the tax upon which it was due had been paid. We are of opinion, however, that this does not render section 611 of the Revenue Act of 1928 inapplicable.

The demurrer is therefore sustained, and the petition is dismissed. It is so ordered.