**JONES, Collector of Internal Revenue,**
**v. H. D. & J. K. CROSSWELL, Inc.**

No. 3289.

Circuit Court of Appeals, Fourth Circuit.

Aug. 1, 1932.

Charles K. Hoover, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C. (Henry E. Davis, U. S. Atty., of Florence, S. C., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Charles T. Hendler, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellant.

Newton K. Fox, of New York City (Thomas, Lumpkin & Cain, of Columbia, S. C., and Adrian C. Humphreys, of New York City, on the brief), for appellee.

Before NORTHCOTT and SOPER, Circuit Judges, and WATKINS, District Judge.

NORTHCOTT, Circuit Judge.

This is an appeal from a judgment of the District Court of the United States for the Eastern District of South Carolina in favor of the appellee (plaintiff below) for the sum of $11,660.81 and interest, in a suit at law, to recover excess profits taxes assessed and collected by the United States for the years 1918, 1919, and 1920 under the provisions of the Revenue Act of 1918.

A jury was waived and the suit tried by the court on stipulations of fact.

In February, 1903, H. D. & J. K. Crosswell, a partnership, acquired a contract to bottle and sell Coca-Cola within certain territorial limits of the state of South Carolina and to purchase Coca-Cola syrup from the Coca-Cola Bottling Company at a stated price per gallon. Thereafter, subcontracts were entered into by the partnership with twelve bottling companies to purchase syrup and bottle Coca-Cola within certain prescribed limits of the state of South Carolina. The partnership, which was formed in 1903, continued until it was incorporated on March 10, 1915, under the laws of the state of South Carolina with a capital stock of $5,000 par value. The stock of the corporation was is-

sued to the partners for the business of the partnership.

The agreed actual cash value of the contracts at the time they were paid in for stock was $162,500.

The appellee timely filed income tax returns on a personal service basis for the years 1918, 1919 and 1920, showing no tax due. The Commissioner of Internal Revenue determined that the appellee was not entitled to be classed as a personal service corporation, and determined its tax liability under the provisions of section 302 of the Revenue Act of 1918 (40 Stat. 1089) for each of the years, which determination resulted in a deficiency being asserted against the plaintiff for each of the years.

From the deficiencies so asserted, the appellee filed a petition with the United States Board of Tax Appeals seeking a review of the Commissioner's determination, on the grounds (1) that the appellee was entitled to personal service classification, or (2), if such classification was denied, to special assessment under the provisions of sections 327 and 328 of the Revenue Act of 1918 (40 Stat. 1093). After a hearing before the Board of Tax Appeals, the determination by the Commissioner of Internal Revenue was affirmed. 6 B. T. A. 1315. The deficiencies determined by the Commissioner of Internal Revenue and affirmed by the Board of Tax Appeals were thereafter assessed, together with interest, the same being paid by the appellee in December, 1927. The appellee duly filed claims for refund of the taxes and interest so paid, and upon rejection thereof by the Commissioner of Internal Revenue brought this suit.

Pertinent provisions of the Revenue Act of 1918 (40 Stat. 1057, 1088, 1089, 1091–1093) are sections 325, 326, 301, and 302. It is admitted that the sole question involved is whether the contracts in question, valued at $162,500, and transferred to appellee for its capital stock, are "tangible" or "intangible" property for the purpose of computing "invested capital" and excess profits taxes for the years in question.

Section 325 (a) of the Revenue Act of 1918 (40 Stat. 1091) provides:

"The term 'intangible property' means patents, copyrights, secret processes and formulæ, good will, trade-marks, trade-brands, franchises, and other like property;

"The term 'tangible property' means stocks, bonds, notes, and other evidences of indebtedness, bills and accounts receivable, leaseholds, and other property other than intangible property. * * *"

At common law, and in the ordinary acceptance of the term, the contracts would undoubtedly be classified as "intangibles," but Congress, as it has the right to do, has defined "tangibles" and "intangibles" for taxation purposes. It therefore remains to be seen whether the classification set up by Congress specifically places these contracts under the head of "tangibles," otherwise they must remain classified as they ordinarily would be, as "intangibles."

When Congress carved out from the great mass of personal property which is and always has been held to be intangible property certain exceptions, the same being "stocks, bonds, notes, and other evidences of indebtedness, bills and accounts receivable, and leaseholds," and made such property tangible, it did not say "and other like property." Being exceptions carved out of the general rule, intangible property not specifically mentioned as being tangible property must be excluded. The maxim "expressio unius est exclusio alterius" applies. It is a well-settled principle of statutory construction that the expression of one thing excludes others not expressed. The Paulina's Cargo, 7 Cranch, 52, 3 L. Ed. 266; Wood v. United States, 16 Pet. 342, 10 L. Ed. 987; United States v. De la Maza Arredondo, 6 Pet. 691, 8 L. Ed. 547; Philadelphia, Wilmington & Baltimore R. R. Co. v. Howard, 13 How. 307, 14 L. Ed. 157; Arthur v. Cumming et al., 91 U. S. 362, 23 L. Ed. 438; 25 C. J. 220.

Further, when a statute limits a thing to be done in a particular mode, it includes a negative of any other mode. Raleigh, etc., R. Co. v. Reid, 13 Wall. 269, 20 L. Ed. 570.

This foregoing principle is most aptly stated in the case of In re Heath, 144 U. S. 92, 12 S. Ct. 615, 36 L. Ed. 358, in which it was held that the affirmative description of the cases in which the jurisdiction may be exercised under the Circuit Court of Appeals Act of March 3, 1891 (26 Stat. 826), implies a negative on the exercise of such power in other cases.

Certainly the contracts are not "stocks, bonds, notes, and other evidences of indebtedness, bills and accounts receivable and leaseholds," and they are not of that class of property ordinarily designated as "tangibles." On the other hand, the inherent qualities of the contracts are similar to those which characterized the items listed as "in-

tangibles" in section 325 (a). They are contracts having a special value because they carried the exclusive right to handle a beverage in certain territory. This beverage had a large sale because of its established reputation, something closely akin to good will, if it could not properly be termed just that. The process of its manufacture or composition was secret, and the formula for its composition was protected from general knowledge. Again, privileges partaking in their nature of an exclusive right to use a certain thing or service have commonly come to be termed "franchises," a meaning differing from the legal definition of a franchise as being a special privilege conferred by the government on the individual. Thus we frequently hear of an Associated Press franchise. These contracts were certainly "like property" to "secret formulæ," because the subject-matter with which they dealt was protected by a secret process, and they were again "like property" to "good will," because they were valuable because the subject-matter with which they dealt was largely valuable because of the reputation that had been built up for Coca-Cola as a drink through wise handling and extensive advertising covering a number of years. The "trade brand" Coca-Cola itself was of great value.

The property here involved is a contractual privilege. It is the right to buy a product at a certain price and to distribute that product by sale over certain territory, and in many respects partakes of the nature of a private franchise.

The phrase "other like property" should not be given a narrow or restricted meaning. The word "like" means "substantially similar." It is thus defined in Webster's International Dictionary: "1. Having the same, or nearly the same, appearance, qualities, or characteristics; resembling; similar to; similar, alike."

In the Century Dictionary and Cyclopedia the word "like" is thus defined: "1. Of similar form, appearance, or quality; of corresponding kind, amount, extent, degree, etc.; corresponding; equal or equivalent; analogous; agreeing in some noticeable respect."

Funk and Wagnalls New Standard Dictionary of the English Language gives this definition of the word "like": "1. Having resemblance; nearly identical in appearance or characteristics; approximate; similar; often formerly with to or unto before the object compared; as, like methods; as like as two peas. 2. Almost or quite the same in the quality considered; equal or nearly equal; virtually equivalent." See, also, United States v. Wallace, 116 U. S. 398, 6 S. Ct. 408, 29 L. Ed. 675; Bliss v. Bliss, 221 Mass. 201, 109 N. E. 148, L. R. A. 1916A, 889.

It is contended on behalf of appellee that the contracts under consideration here are similar to the tangible property enumerated in the statute, but, even were this true, such similarity would not be sufficient to bring them under the classification of "tangible" made by Congress, because the statute enumerates the tangibles specifically, and does not follow the enumeration with the phrase "other like property." When the enumeration does not include specifically the property, it cannot be brought in under any general terms, because there are no general terms. One of the general rules of statutory construction is that a proviso or exception in a statute is to be strictly construed, and one who sets up an exception must establish it as being within the words as well as the reason thereof. Spokane & I. E. R. Co. v. United States, 241 U. S. 344, 36 S. Ct. 668, 60 L. Ed. 1037.

No statute is to be construed as altering the common law further than its words import. Ross v. Jones, 22 Wall. 576, 22 L. Ed. 730; Ransom v. Williams, 2 Wall. 313, 17 L. Ed. 803.

Carried to its logical conclusion, the contention made on behalf of appellee leads to a wholly impossible result. Thus a patent is necessarily held to be an intangible because so enumerated in the statute, while a contract entered into between a patentee and a licensee, under appellee's contention, would be a "tangible." Here the secret process or formula for producing Coca-Cola is clearly an intangible, and it is reasonable to conclude that a contract dealing with Coca-Cola should also be classed as an "intangible," unless it is otherwise specifically provided by statute.

The rule relied upon by the learned judge below for reaching his conclusion that these contracts were "tangibles," that all the "intangibles" possessed the common characteristic of being given protection by special statutes, certainly does not apply to "good will," and therefore could not have been in the contemplation of Congress when it made the classification.

While we have been able to find no decision bearing directly on this point, somewhat similar contracts have been held to be intangible property for the purposes of taxation. Bacon Coal Company v. United States

(D. C.) 34 F.(2d) 706; Daily Pantagraph, Inc., v. United States, 37 F.(2d) 783, 68 Ct. Cl. 251.

In Strong Publishing Company v. Commissioner of Internal Revenue (C. C. A.) 56 F.(2d) 550, 552, Judge Evans said:

"Final determination of this close question must turn upon the effect of the words 'and other like property' as used in the first clause of section 325 (a). This expression must be given some range of equivalents. Such equivalency extends to species of property somewhat like the different kinds enumerated—'patents, copyrights, secret processes and formulæ, good will, trade-marks, trade-brands, franchises. * * * '

"All of these species of property are in law and in commerce recognized as possessing attributes somewhat different from 'stocks, bonds, notes and other evidences of indebtedness, bills and accounts receivable, leaseholds. * * * ' And that which earmarks their difference, specifically and as a group, is the presence or absence of speculativeness in determining their value.

"Considering all the circumstances—the language of the statute, the purpose of the classification of property into tangible and intangible, the differences in the certainty with which their value may be ascertained—we conclude that the circulation of a newspaper falls within the comprehension of the clause 'other like property' used in the first paragraph of section 325 (a)."

There is here no such doubt as to the intention of Congress as would justify our deciding the question in favor of the taxpayer. The contracts in question are "intangibles." The judgment of the court below is accordingly reversed.