**UNITED STATES ex rel. CLIFTON MFG. CO.
v. BURNET, Commissioner of Internal
Revenue.**

No. 5720.

Court of Appeals of the District of Columbia.
Argued Oct. 6, 1932.
Decided Oct. 31, 1932.

W. A. Sutherland, of Atlanta, Ga., and F. O. Graves, of Washington, D. C., for appellant.

Charles K. Hoover, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

An appeal from a decision of the lower court denying appellant's petition for a writ of mandamus to compel the Commissioner of Internal Revenue to take official action upon a certain refund claim and to allow or reject the same.

It appears that the appellant on July 14, 1919, filed its original income tax return for the fiscal year ending March 31, 1919. Thereupon an assessment of additional taxes upon appellant for that year was made by the Commissioner of Internal Revenue in May, 1921. On July 7, 1921, appellant filed an amended return for the year in question, showing an overpayment of $57,007.21. On the same date appellant filed a claim with the Commissioner for refund of $33,135.04, and for the abatement of the additional taxes assessed against it for the year 1919 as aforesaid. Appellant avers that the Commissioner has not acted upon its claim for the refund of $33,135.04 filed on July 7, 1921, and unlawfully fails and refuses to act upon the claim, either by allowing it or rejecting it; that, by reason of such failure and refusal to act on such claim, appellant is prevented from bringing an action for the refund of the taxes to which it is lawfully entitled, citing the limitations of section 3226, Rev. St., as amended by section 1113 (a), Revenue Act of 1926 (26 USCA § 156), which reads as follows:

Section 3226: "No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof; but such suit or proceeding may be maintained, whether or not such tax, penalty, or sum has been paid under protest or duress. No such suit or proceeding shall be begun before the expiration of six months from the date of filing such claim unless the commissioner renders a decision thereon within that time, nor after the expiration of five years from the date of the payment of such tax, penalty, or sum, unless such suit or proceeding is begun within two years after the disallowance of the part of such claim to which such suit or proceeding relates. The commissioner shall within 90 days after any such disallowance notify the taxpayer thereof by mail."

Appellant avers that there is no indebtedness of any kind whatever owing by it to the United States, and that it was the mandatory duty of the Commissioner to consider and decide upon appellant's refund claim, that the Commissioner's duty so to act did not involve the exercise of any discretion, and that appellant has no other remedy open to it but to petition the court for a writ of mandamus to compel the Commissioner to pass upon its claim. Appellant therefore prays for a writ of mandamus to be issued

to the Commissioner commanding and directing him to consider and pass upon appellant's claim for refund for the year 1919 either by allowing or rejecting the same and notifying appellant of such action as required by law.

The Commissioner filed an answer in the lower court wherein he averred that on May 26, 1926, he had rejected the claim for refund of $33,135.04, filed by appellant, and at the same time had notified appellant to that effect. Appellant admits that, if the Commissioner actually rejected the refund claim at any time in the year 1926, appellant is not entitled to prevail in this case. The sole question, therefore, is whether the claim for refund was then rejected as alleged by the Commissioner.

It appears from the record that on May 26, 1926, there was pending before the Commissioner appellant's claim for refund of $33,135.04, as aforesaid, together with certain other claims of appellant in relation to its taxes for the fiscal year ending March 31, 1919, and that the Commissioner on that date delivered a letter to the appellant covering all of such claims, reading as follows: "In accordance with the above conclusions, your 1918 claim for the abatement of $80,-800.12 will be rejected in full. Your 1919 claim for abatement of $86,797.77, refund of $33,135.04, credit of $21,620.14, and credit of $2,252.03, aggregating $143,804.98, will be allowed for $25,968.35 and rejected for $117,836.63. The overassessment shown above will be made the subject of a certificate of overassessment which will reach you in due course through the office of the collector of internal revenue for your district, who thus will be officially notified of the rejections. Upon receipt of notice and demand from that official, payment should be made to his office in accordance with the conditions of his notice."

It is contended by the Commissioner that the foregoing letter is sufficient evidence of the fact that the claim for refund was fully considered by him, and was rejected, and that appellant was duly notified of its rejection. On the other hand, the appellant contends that the terms of the letter applied in futuro only, and were to the effect that the claim would be rejected at some subsequent time, and were not to the effect that it had been or thereby was in fact rejected. Appellant therefore claims that the letter did not constitute a rejection of the claim, and was not evidence of an actual rejection.

It is, of course, conceded that the refund claim in question was included in the aggregate sum of $143,804.98 set out in the foregoing letter, which the Commissioner stated "will be allowed for $25,968.35 and rejected for $117,836.63." The question is whether this language should be interpreted as signifying a past or concurrent rejection, or one thereafter to be made.

In our opinion, the natural force and effect of the language employed by the Commissioner was to serve notice upon the taxpayer that the claim in question was in fact rejected and was not intended as a warning of future action by the Commissioner. In this conclusion we are sustained by competent authorities.

In Connell v. Hopkins (D. C.) 43 F.(2d) 773, 774, it was held that the Commissioner's letter in answer to a claim for refund, reciting that the claim "will be rejected," constituted a notice of actual rejection. In respect to such a letter, the court says: "The letter quoted above is sufficiently explicit to warrant the statement that it is the present tense. It is not a prophecy of what the commissioner may do. It means, and I think says, 'your claim is rejected.' "

In Daily Pantagraph, Inc., v. United States (Ct. Cl.) 37 F.(2d) 783, it was held that a letter of the Commissioner to a taxpayer stating "that your claims will be rejected" constitutes a definite rejection of the claim for refund referred to in the letter as respected the running of the statute of limitations. Cf. New England Mut. Life Ins. Co. v. United States (Ct. Cl.) 52 F.(2d) 1006; Savannah Bank & Trust Co. v. United States (Ct. Cl.) 58 F.(2d) 1068, 1070. In the latter case the question arose whether the refund claim was rejected on July 31, 1929, when the Commissioner sent to the taxpayer a statement that "your claim for refund will, therefore, be rejected in full," or on the following August 9th, on which day an official schedule disallowing the claim was signed by the commissioner. It was held that the rejection should date at the time when the Commissioner signed and approved the schedule of rejection. The court said:

"It is not compulsory that the commissioner sign such a schedule before a claim can be regarded as disallowed. The date on which a particular claim is disallowed for the purpose of computing the two-year period provided in section 3226 of the Revised Statutes for the institution of suit must be determined upon the facts in each case. If it is shown that the commissioner signed a schedule of rejection, the date on which such schedule is approved must be taken as the

date of disallowance. If such schedule is not issued, the claim is disallowed on the date on which the taxpayer is notified by the commissioner's office of the action taken thereon. In such case it is immaterial whether the notification of the disallowance concludes with the statement, 'Your claim will, therefore, be rejected,' or the statement, 'Your claim is rejected.' Royal Bank of Canada v. United States, 44 F.(2d) 249, 70 Ct. Cl. 663. The signing of the official schedule of rejection usually, if not always, occurs on a date subsequent to the date on which the taxpayer is first notified of the conclusions reached by the Bureau of Internal Revenue.

"It appears that it was not the practice of the Commissioner of Internal Revenue until recently to sign an official schedule of rejection in every case in which a claim had been filed. In Daily Pantagraph v. United States, 37 F.(2d) 783, 68 Ct. Cl. 251, and New England Mut. Life Ins. Co. v. United States, 52 F.(2d) 1006, 72 Ct. Cl. 658, this court held that the claims for refund under consideration were rejected by the commissioner's letter notifying the particular taxpayers that, 'Your claim will be rejected.' It did not appear in those cases that the commissioner signed an official schedule of rejection. The contention made by the government in the Daily Pantagraph Case and by the plaintiff in the New England Mutual Life Insurance Company Case was that a written notification by the commissioner to the taxpayer stating that, 'Your claim will be rejected,' could not constitute a disallowance of the claim within the meaning of section 3226 of the Revised Statutes, as amended. The court correctly held in both cases that the claims in question were rejected by the commissioner."

There is no claim in this case that an official schedule of rejections of refund claims was kept by the Commissioner in the year 1926, nor that the Commissioner in his letter to appellant made any reference to such a schedule as in Michel v. United States, 37 F.(2d) 38 (C. C. A.) reversed 282 U. S. 656, 51 S. Ct. 284, 75 L. Ed. 598, nor that such a schedule was ever in fact signed by the Commissioner. So far as appears, the rejection in this case was rested by the Commissioner solely upon the letter dated May 26, 1926, and apparently was so accepted by appellant. We think that under the facts and circumstances of this case this letter constituted a rejection of the claim, and accordingly that the lower court was right in overruling appellant's prayer for a writ of mandamus. Its decision is therefore affirmed.