## PACIFIC MILLS v. NICHOLS, Collector of Internal Revenue.

### · No. 4622.

District Court, D. Massachusetts.

Oct. 3, 1933.

O. W. Taylor, of Boston, Mass., for plaintiff.

Frederick H. Tarr, U. S. Atty., and J. Duke Smith, Sp. Asst. to U. S. Atty., both of Boston, Mass., for defendant.

McLELLAN, District Judge.

The defendant has filed an answer in abatement and the plaintiff has filed two motions, one entitled "Plaintiff's Motion in Opposition to Defendant's Answer in Abatement," and the other, "Plaintiff's Motion to Strike out Defendant's Answer in Abatement."

The record consists of the writ, the amended declaration, the answer in abatement, the two motions, documentary evidence, and the testimony of two witnesses.

The writ is dated September 3, 1929, and sounds in contract. The amended declaration alleges that the plaintiff filed its return for the year 1918 showing federal income, war profits and excess profits taxes of $7,223,836.-38, which taxes were paid in March, 1919. In April, 1923, an additional tax of $425,446.-72 was assessed and $334,822.51 paid. In February, 1926, the balance was paid by means of a charge against the plaintiff's overpayment of taxes for another year.

The plaintiff's present claim is for $334,-822.51, and the larger original claim is mentioned to avoid misunderstanding as to amounts appearing in the exhibits later referred to.

On or about March 14, 1924, the plaintiff filed a claim on Treasury Department form No. 843 for the refund of $7,649,283.10, which, among other things, included the following:

"5. The taxpayer is entitled to relief under Sections 327 and 328 of the Revenue Act of 1918 and the regulations relating thereto. A separate application for special relief under these sections has been forwarded to Washington which it is requested be considered with this claim for refund.

"6. The cost of goods sold was greater than the amount stated on the return. In particular the corporation contends that the market price of cotton and wool fixed by the Department as of December 31, 1918, was greater than the actual market price.

"This claim for refund is filed for the purpose of protecting the taxpayer against the effect of the Statute of Limitations, the exact amount of the overpayment not yet having been determined.

"Before this claim for refund is disallowed, a hearing before the Department is respectfully requested."

Sections 327 and 328, Revenue Act 1918 (40 Stat. 1093), providing for special relief, read in part as follows:

"Sec. 327. That in the following cases the tax shall be determined as provided in section 328: * * *

"(d) Where upon application by the corporation the Commissioner finds and so declares of record that the tax if determined without benefit of this section would, owing to abnormal conditions affecting the capital or income of the corporation, work upon the corporation an exceptional hardship evidenced by gross disproportion between the tax computed without benefit of this section and the tax computed by reference to the representative corporations specified in section 328. This subdivision shall not apply to any case (1) in which the tax (computed without benefit of this section) is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital, nor (2) in which 50 per centum or more of the gross income of the corporation for the taxable year (computed under section 233 of Title II) consists of gains, profits, commissions, or other income, derived on a cost-plus basis from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive.

"Sec. 328. (a) In the cases specified in section 327 the tax shall be the amount which bears the same ratio to the net income of the taxpayer (in excess of the specific exemption of $3,000) for the taxable year, as the average tax of representative corporations engaged in a like or similar trade or business, bears to their average net income (in excess of the specific exemption of $3,000) for such year. In the case of a foreign corporation the tax shall be computed without deducting the specific exemption of $3,000 either for the taxpayer or the representative corporations.

"In computing the tax under this section the Commissioner shall compare the taxpayer only with representative corporations whose invested capital can be satisfactorily determined under section 326 and which are, as nearly as may be, similarly circumstanced with respect to gross income, net income, profits per unit of business transacted and capital employed, the amount and rate of war profits or excess profits, and all other relevant facts and circumstances.

"(b) For the purposes of subdivision (a) the ratios between the average tax and the average net income of representative corporations shall be determined by the Commissioner in accordance with regulations prescribed by him with the approval of the Secretary.

"In cases in which the tax is to be computed under this section, if the tax as computed without the benefit of this section is less than 50 per centum of the net income of the taxpayer, the installments shall in the first instance be computed upon the basis of such tax; but if the tax so computed is 50 per centum or more of the net income, the installments shall in the first instance be computed upon the basis of a tax equal to 50 per centum of the net income. In any case, the actual ratio when ascertained shall be used in determining the correct amount of the tax. If the correct amount of the tax when determined exceeds 50 per centum of the net income, any excess of the correct installments over the amounts actually paid shall on notice and demand be paid together with interest at the rate of ½ of 1 per centum per month on such excess from the time the installment was due."

It is to be noted that while the foregoing claim for refund stated that the plaintiff was entitled to the relief provided by the foregoing provisions of the Revenue Act of 1918, and referred to a separate application for such relief, the plaintiff also specifically based its claim for refund upon the contention that the cost of goods sold was greater than the amount stated on the return, and upon the contention that the market price of cotton and wool fixed by the Department as of December 31, 1918, was greater than the actual market price.

On or about December 30, 1924, the Commissioner of Internal Revenue wrote the plaintiff substantially as follows:

"An examination of your income tax returns for the taxable years 1918 and 1919, together with the information heretofore submitted, has been made and the results thereof are outlined in the attached statement and accompanying schedules.

"Reference is made to the requests contained in your claims dated March 11, 1924, that your profits taxes for the years 1918 and 1919 be computed under the provisions of sections 327 and 328 of the Revenue Act of 1918.

"Before consideration can be given your requests, there must be a final determination of your net income for the years in question. It will, therefore, be necessary for you to advise this office within thirty days from the date of this letter of your acquiescence in the determination of the net income disclosed

in schedules 1 and 3, or exceptions, if any, which you may take thereto."

The above letter refers to the same paper heretofore stated to have been filed on or about March 14, 1924.

On or about January 10, 1925, the plaintiff wrote the Commissioner of Internal Revenue, acknowledging receipt of the letter of December 30, 1924, and stating: "Pacific Mills hereby agrees to the determination of net income for the years 1918 and 1919 as set forth in said letter, namely, $12,386,889.-20 for 1918 and $7,109,921.35 for 1919, for the purpose of determining income and excess profits taxes for those years under Sections 327 and 328 of the Revenue Act of 1918. It is again requested, before any decision is reached denying special assessment under the foregoing sections, that the corporation be granted an opportunity to be heard before the Commissioner of Internal Revenue in Washington."

The plaintiff presented during the trial numerous requests for findings of fact and rulings of law, and in order to give the plaintiff an opportunity to save its rights, I continued the trial until this third day of October, 1933.

The first four requests for findings, except that portion of the third as to a refusal by the Commissioner to consider the contentions set forth in the claim, were granted.

In its eleventh request, which was denied, the plaintiff sought a finding or ruling that the Commissioner's letter of December 18, 1925, is not a rejection of the plaintiff's contention in regard to the valuation of its wool inventory, said contention having been mutually waived and abandoned before the Commissioner would consider the said claim of March 14, 1924.

This letter, so far as material, is substantially as follows:

"Reference is made to your corporation income and profits tax return for the years 1918 and 1919.

"After careful consideration and review and an examination of all the facts submitted, your application under the provisions of Section 327 for assessment of your profits tax under Section 328 of the Revenue Act of 1918 has been denied for the reason that no abnormality affecting either your capital or income has been disclosed which would bring your case within the scope of paragraph (d) of Section 327. Furthermore, the audit of your case discloses no exceptional hardship evidenced by gross disproportion between the tax computed without benefit of Section 328 and the tax computed by reference to the representative corporations specified in that section.

"The tax liability for each of the years 1918 and 1919, as determined in Bureau letter dated December 30, 1924, is therefore sustained.

"In accordance with the above conclusions, your claim for the refund of $7,649,283.10 for the year 1918 will be rejected in full, and your claim for the refund of $1,487,736.15 and credit of $90,624.21, aggregating $1,578,360.-36 for the year 1919 will be rejected for $1,-485,603.46.

"The Collector of Internal Revenue for your district will be officially notified of the rejection at the expiration of 30 days from the date of this letter."

I think the foregoing letter is to be construed as showing an intention to reject the whole claim filed March 14, 1924, which claim, as heretofore stated, provided in the sixth paragraph thereof: "The cost of goods sold was greater than the amount stated on the return. In particular the corporation contends that the market price of cotton and wool fixed by the Department as of December 31, 1918, was greater than the actual market price."

The claim of March 14, 1924, was actually rejected for the full amount for which it was filed, and the rejection listed on rejection schedule No. 4638, signed by the assistant to the Commissioner on February 10, 1926.

I was requested by the plaintiff to find that the plaintiff was never at any time notified that its claim of March 14, 1924, had been officially rejected on February 10, 1925, (request No. 12), and I so find; but, as heretofore stated, the plaintiff was notified that such claim would be rejected. It seems to me of no importance, so far as the issues here presented are concerned, whether the plaintiff was notified of the rejection of its claim after the rejection had been officially scheduled. Where the Commissioner notifies the taxpayer by letter that his claim will be rejected and the rejection is not officially scheduled, such letter constitutes a rejection. Daily Pantagraph, Inc., v. United States (Ct. Cl.) 37 F.(2d) 783; New England Mutual Life Insurance Co. v. United States (Ct. Cl.) 52 F.(2d) 1006. Where, as in the case at bar, the taxpayer is notified that his claim "will be rejected," and the rejection is scheduled, the statute of limitations runs from the

date the rejection is scheduled. Savannah Bank & Trust Co. v. United States (Ct. Cl.) 58 F.(2d) 1068.

As stated in United States v. Michel, 282 U. S. 656, at pages 659 and 660, 51 S. Ct. 284, 285, 75 L. Ed. 598, referring to Revised Statutes, § 3226, as amended (26 USCA § 156) the applicable statute in the case at bar:

"There is nothing in the legislative history of the provision to indicate an intention that the two-year period should not commence upon the disallowance of the claim or that it should be extended by the failure of the Commissioner to give the specified notice.

"Having regard to the rule of strict construction to be applied to waivers by the United States of its sovereign immunity from suit, the clause reasonably may be read merely as a direction to the Commissioner to send the notice to claimant without making the failure so to do have the effect of enlarging the period for suing as otherwise definitely prescribed."

On March 26, 1927, the plaintiff filed a claim which alleged as a ground for refund that: "The taxpayer contends that its closing inventory of wool for the year 1918 should be valued at the British issue prices rather than at the figures fixed by the Department. If this were so, the reduction of inventory and income for the year 1918 would result in a reduction of tax considerably larger than $425,446.72, which is the amount of additional tax paid for the year 1918 on April 4, 1923, or less than four years prior to the filing of this claim for refund."

In this claim for refund the plaintiff asked for a conference before the claim was rejected. The plaintiff was given an opportunity for such a conference and did not have the evidence necessary to substantiate the facts set forth in the claim. Accordingly, no hearing was held. See the testimony of Bartlett Harwood, Esq.

On or about the 27th of June, 1927, the Commissioner wrote the plaintiff, in substance, as follows:

"An examination of your claim for refund in the amount of $425,446.72 of corporation income and profits taxes for the year 1918 has been made. The claim is based upon the contention that taxpayer's inventory should be valued at British issue prices rather than at the figures fixed by the Department.

"Data submitted in connection with this claim does not substantiate taxpayer's contention for the reason that it is shown British issue prices do not enter into taxpayer's inventory for the year 1918.

"You will be allowed ten days within which to submit other information. If no reply is received at the end of this time, it will be presumed that you do not wish to pursue the matter further, and the claim will then be rejected on the next schedule to be approved by the Commissioner."

The claim was rejected on September 8, 1927, and according to Mr. Harwood, who was then acting as counsel for the plaintiff, nothing further was done until this action was brought.

Section 3228 of the Revised Statutes, as amended by section 1112 of the Revenue Act of 1926 (26 USCA § 157 and note), and section 3226 of the Revised Statutes, as amended by Revenue Act 1926 § 1113 (a) (26 USCA § 156) provide:

"Sec. 3228. (a) All claims for the refunding or crediting of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty alleged to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected must, except as provided in sections 284 and 319 of the Revenue Act of 1926, be presented to the Commissioner of Internal Revenue within four years next after the payment of such tax, penalty, or sum.

"Sec. 3226. No suit or proceeding shall be maintained in any court for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected until a claim for refund or credit has been duly filed with the Commissioner of Internal Revenue, according to the provisions of law in that regard, and the regulations of the Secretary of the Treasury established in pursuance thereof; but such suit or proceeding may be maintained, whether or not such tax, penalty, or sum has been paid under protest or duress. No such suit or proceeding shall be begun before the expiration of six months from the date of filing such claim unless the Commissioner renders a decision thereon within that time, nor after the expiration of five years from the date of the payment of such tax, penalty, or sum, unless such suit or proceeding is begun within two years after the disallowance of the part of such claim to which such suit or proceeding relates. The Commissioner shall within 90

days after any such disallowance notify the taxpayer thereof by mail."

This action was brought after the expiration of five years from the date of the payment of such portion of the tax as the plaintiff now seeks to recover. Accordingly, the action cannot be maintained unless the suit was begun within two years after the disallowance of the claim to which this suit relates.

The plaintiff relies upon the rejection of its claim for refund filed in June, 1927, and rejected on September 8, 1927. This action was brought within two years of such rejection, but as I view it, the plaintiff's difficulty is that substantially the same claim had been made and rejected at a prior time and more than two years before suit brought. The situation presented in the case at bar is not unlike that in B. Altman & Company v. United States (Ct. Cl.) 40 F.(2d) 781, where it was held that a claim for refund having been filed, and no suit having been brought within two years from its rejection, the court had no jurisdiction of a suit based on a second claim for refund specifying the same grounds as the first claim. A distinction between the Altman Case, in which certiorari was denied by the Supreme Court of the United States, and the case at bar is that in the former case the second claim for refund was filed after the expiration of the two-year period from the date of rejection, while in the case at bar it was filed within the two-year period from the date of rejection. This appeals to me as a distinction without a difference.

It is urged that the case at bar is to be distinguished from the Altman Case because in the latter case the claims were for the same amount and in almost identical language, and because both claims conformed to the statute and regulations. It seems to me that I ought to deal with this question as a matter of substance and not of form; not concern myself with identity of amounts or language, but look to see whether or not, in the case at bar, substantially the same claim was made and rejected as was made later.

The plaintiff urges that the earlier claim was waived and abandoned. I think there is quite as good ground for saying that the second claim was waived. See the reference to Mr. Harwood's testimony, supra. Be this as it may, I am not satisfied that the earlier claim was waived. It was rejected and no action based on such rejection was brought within two years, or at any other time.

The plaintiff's fifth, sixth, seventh, eighth, ninth, tenth, eleventh, thirteenth and fourteenth requests for findings of fact were denied because as to portions of them they are not supported by the record, while as to other portions they are immaterial to the issue presented by the answer in abatement and the motions.

Of the plaintiff's requests for rulings of law, the first was granted, and the second, third, and fourth were denied. The fifth request was denied because, while as there indicated the relief by way of special assessment is discretionary and not subject to review, the plaintiff had sought in its claim for refund not only special relief, but claimed also substantially the same thing as appeared in its second claim. Each claim for refund complained of overvaluation of its inventory.

The plaintiff's eighth request for a ruling that the defendant is estopped from reliance upon the statute of limitations because no notice of rejection was given by the Commissioner was denied upon the authority of the cases cited supra.

The plaintiff's other requests, numbered 6, 7, and 9, are denied as either inapplicable or unwarranted.

The answer in abatement is sustained, and the plaintiff's motions in opposition thereto and to strike out the answer in abatement are denied.