ELGIN NAT. WATCH CO. v. UNITED STATES.

No. 42597.

Court of Claims.

Feb. 3, 1936.

John E. Hughes, of Chicago, Ill. (Gardner, Carton & Douglas, of Chicago, Ill., on the brief), for plaintiff.

John W. Hussey, of Washington, D. C., and Frank J. Wideman, Asst. Atty. Gen. (T. H. Lewis, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

GREEN, Judge.

Plaintiff has filed a motion to amend the filings and for a new trial. The opinion heretofore filed contained a typographical error, misstating a date which might lead the reader to mistake the document referred to in connection therewith. We have also concluded to make some additional findings. None of these matters alter the opinion of the court as to the final result in the case, but under the circumstances it is thought best to withdraw the original findings, judgment, and opinion, and file amended findings, together with a new opinion, which is as follows:

This is a suit to recover a portion of income and profits taxes paid by the plaintiff for the year 1920. The action is based upon a claim for refund filed June 6, 1925, and a determination of the amount of overpayment for that year made by the commissioner on February 13, 1932.

The record made by the Bureau of Internal Revenue with reference to plaintiff's taxes for 1920 is very confusing and in some respects contradictory. The taxes for 1920 depend to some extent upon the amount of the taxes for 1919, and the question of the amount of taxes due for the latter year was for a long time in the courts and was not settled until after the commissioner had made his final determination of the taxes for 1920. Counsel for the respective parties have not, to say the least, assisted in clearing up the confusion by filing a stipulation which contains much matter entirely irrelevant and includes documents some of which contain reams of calculations based upon plaintiff's claims unsupported by any satisfactory evidence. When this mass is sifted the material facts are as follows:

On October 16, 1924, in a document which also referred to the years 1918 and 1919, the plaintiff made a claim for the refund of $149,517.80 for the year 1920 alleged to have been determined as an overassessment by the commissioner in a letter dated August 30, 1924. On May 19, 1925, the commissioner issued his schedule of refunds and credits for the year 1920 allowing an overassessment in the sum of $149,517.80 and crediting this amount to taxes outstanding and uncollected for the fiscal year ending April 30, 1919. On May 20, 1925, plaintiff filed a brief entitled "Brief of Facts Relating to Claim for Abatement of $191,127.64 for the Taxable Year 1919 and Proposed Additional Assessments of $3,360.76 and $4,871.75 for the Taxable Years 1921 and 1922." It will be noticed that this brief was not submitted for the purpose of determining the taxes for 1920, although it refers to the fact that the commissioner had previously allowed an overassessment on the taxes for 1920 of $149,517.80 as stated above. The brief also contained a statement that the plaintiff "bases its appeal for a redetermination of the income and profits taxes due from it for the taxable years 1919 to 1922" upon a contention that the commissioner had "erred in including as a part of the income and expense of the Elgin National Watch Company, the income and expense of the board of trustees of the Elgin National Watch Company's pension fund and the Elgin National Watch Company's special pension fund." And that "the Commissioner has also erroneously disallowed contributions made to the board of trustees of these funds."

On June 6, 1925, the plaintiff filed a second claim for refund reciting: "This claim is filed as a demand for the refund of the overassessment stated by the Commissioner in his letter of August 30, 1924, or such other amount as may be determined to be refundable upon the final audit of the return for the taxable year ended April 30, 1920."

On June 22, 1925, plaintiff filed a brief entitled "Supplementary Brief Relating to Income and Profits Taxes for the Taxable Years 1919 to 1922, Inclusive." This brief contained an extremely elaborate and extensive calculation of the taxes of plaintiff for those years in accordance with the method and basis which plaintiff considered should be adopted. It stated that it should be considered as part of the brief previously filed, and attached to it was a prayer for relief in which the commissioner was requested to refund $250,702.55, of which an overpayment for 1920 was specified in the sum of $97,044.98, an overpayment for 1919 in the sum of $258,569.98, and there was subtracted the total of certain additional taxes for 1921 and 1922.

On June 25, 1926, the commissioner addressed a letter to plaintiff stating among other things in substance that its claim for abatement of the deficiency for the years 1919 and 1920 had been allowed in part and rejected in part. The calculation upon which the commissioner based his conclusions accompanied the letter. As shown above, the claim for abatement was set out in the brief filed May 20, 1925.

Plaintiff took an appeal from the commissioner's decision of its tax liability for the year 1919 to the United States Board of Tax Appeals, which on June 24, 1931, decided that there had been an overpayment for that year in the amount of $481,963.79. The findings of fact and opinion on this appeal appear in Elgin Watch Co. v. Commissioner of Internal Revenue, 17 B.T.A. 339–364. The commissioner refunded the $149,517.80 which had been credited from the 1920 overassessment upon the taxes for 1919 and, having refused to make any further refund, plaintiff brought suit to recover the amount with interest which was due under the decision of the Board of Tax Appeals. This suit after having gone through the District Court and the Circuit Court of Appeals was finally settled sometime after October 20, 1933, by the government paying $500,000 in accordance with a certificate of overassessment for 1919 issued by the commissioner. If plaintiff wished to amend its refund claim for 1920, it should have done so when the Board of Tax Appeals rendered its opinion on September 19, 1929, in favor of the plaintiff on the main issues, or at least on June 24, 1931, when the board entered its final decision, in order to bring before the commissioner the question now raised. Especially should it have done this when it saw that the commissioner was contesting the board's decision for 1919 in plaintiff's favor and had taken the case to the Circuit Court of Appeals. Instead of so doing plaintiff waited three years before attempting to

call the matter to the attention of the commissioner, and four months after the claim for 1920 had been finally decided.

On February 13, 1932, while the taxes for the year 1919 were pending in the Circuit Court of Appeals on an appeal by the government, the commissioner issued a certificate of overassessment for the year 1920 in which the net amount of overassessment for that year, after deducting the $149,517.80 previously allowed, was fixed at $56,994.91, but $11,333.67 thereof was stated to be barred by the statute of limitations. The remainder, $45,661.24, was credited in the sum of $30,726.08 to the taxes of 1921, and $14,-935.16, together with interest in the sum of $29,709.27, was refunded. On June 17, 1932, the plaintiff's attorney addressed a letter to the commissioner in which he stated that the plaintiff had filed a claim for the refund of $149,517.80 for the year 1920 and that no action had been taken thereon. To this letter was attached a postscript as follows: "Under the decision of the Court of Claims in the case of Factors & Finance Co., we hereby amend the said claim by claiming that there should be added to the invested capital of the taxpayer as set forth in the 60-day letter issued by you, 42% of the overpayment determined by the United States Board of Tax Appeals in the case of this company for the year 1919. Please consider the claim amended accordingly."

On October 12, 1932, the commissioner addressed a letter to plaintiff's attorney stating in substance that the refund claim having been allowed in full the taxpayer was not entitled to any further refund and the request for reopening the claim was specifically denied. The parties have stipulated that in determining plaintiff's invested capital for the fiscal years of 1920, 1921, and 1922, the commissioner did not include therein any part of the balance of the overpayment for 1919 determined by the United States Board of Tax Appeals.

The amended petition, while not as definite as it should be, is based on plaintiff's claim of June 6, 1925, and the two briefs to which reference is made above. It alleges that the commissioner determined an overpayment of $56,994.91 and credited and refunded only $45,661.24 thereof. Also that the Commissioner of Internal Revenue has erroneously and improperly excluded from plaintiff's invested capital all of an overpayment of $332,-445.99 (determined by the Board of Tax Appeals) of income and profits taxes made by the plaintiff for 1919 and refunded to the plaintiff. Plaintiff contends in effect that when its taxes for 1920 are properly computed and in the calculation a certain proportion of the overassessment for 1919 is used to increase the amount of invested capital for 1920, the result will show that it is entitled to $18,035.52 over and above the amount of refund which it has received.

On behalf of defendant it is contended that no claim was ever filed which presented the matter on which plaintiff now bases its case, that the commissioner was right in holding that $11,333.67 of the overassessment determined by him on February 13, 1932, was barred by the statute of limitations, and that there is nothing due the plaintiff. It is also argued on behalf of defendant that the amount of overassessment for 1919 having been in litigation until after the commissioner finally determined the taxes for 1920 was properly disregarded by the commissioner.

■ It is clear that there never was any claim filed based on an error by the commissioner in computing the taxes for 1920. The original claim of October 16, 1924, was based upon the commissioner's statement in a letter that the taxes for 1920 had been overassessed in the amount of $149,517.80. The second claim filed on June 6, 1925, was the same as the first except that it added the words "or such other amount as may be determined to be refundable upon the final audit of the return for the taxable year ended April 30, 1920." It made no reference to any claim for refund on the ground of a recomputation which would take into consideration the overassessment for 1919. This claim covered two matters and two only. One was the overpayment of $149,517.80 for the year 1920 which had been allowed, scheduled, and credited in the first instance upon taxes for 1919 but subsequently refunded with interest. The other was such amount "as may be determined to be refundable upon the final audit of the return for the taxable year ended April 30, 1920." This statement is very definite. It does not refer to such an amount as a *court* might upon consideration of all of the material facts find was properly due for the

year 1920, but the amount which is "determined to be refundable on the final audit" by the commissioner's office. In other words, the plaintiff asked the refund of the $149,517.80 which was subsequently refunded and any additional amount to which the commissioner might subsequently determine it was entitled. If a blanket construction were given the language used in the claim it would nullify the well-established rule that the grounds of the claim must be stated when the taxpayer asks for a refund. See United States v. Felt & Tarrant Co., 283 U.S. 269, 51 S.Ct. 376, 75 L.Ed. 1025.

The plaintiff contends, however, that the claim was amended by the briefs to which we have referred above and when so amended included a new claim altogether different from anything that was set up in the original claim or claims. The basis of this new claim is evidently a statement contained in one of the briefs that the commissioner erred in including as a part of the income and expense of the Elgin National Watch Company, the income and expenses of the board of trustees of the Elgin National Watch Company's pension fund and the Elgin National Watch Company's special pension fund, and upon this basis counsel for plaintiff argues that the commissioner should have included the 1919 overpayment in plaintiff's 1920 invested capital, and asserting that this was not done, plaintiff contends that it is entitled to recover not only the $11,333.67 which the commissioner disallowed on the ground it was barred by the statute of limitations but also a further sum, making the total amount of recovery asked $18,035.52.

It will be observed that neither of the briefs purports to amend any previous claim for refund. The first brief merely set out the substance of the commissioner's letter, which allowed an overassessment of $149,517.80, asked an *abatement* of a proposed additional assessment for the year 1919, and made a protest against an additional assessment for 1921 and 1922. Beyond what was contained in the commissioner's letter, it did not refer in any way to the taxes of 1920. The second brief, as we have stated before, related to a claim for abatement for the year 1919 and proposed additional assessments for the years 1921 and 1922. It contained an elaborate computation (which would make a good-sized book in itself) of the taxes for the years

1919, 1920, 1921, and 1922, showing the manner in which plaintiff claimed these taxes should be calculated, but did not state that it was offered to perfect or amend the claim for refund for 1920 which had been filed only sixteen days before. On the contrary, it recited that it should be considered as part of the brief previously filed.

As shown in the findings and stated above in this opinion, this second brief filed June 22, 1925, also contained what was denominated a prayer for relief in which the assessments made by the commissioner for the years 1919, 1921, and 1922, were set out together with the over-assessment which he had allowed of $149,-517.80 for 1920, and in lieu of the taxes as thus assessed the commissioner was requested to make a refund in accordance with a table which showed an overassessment in a very large amount for 1919, and of $97,044.98 for 1920 (which sum was less than the commissioner had allowed) less certain additional taxes for 1921 and 1922. Further on, the brief sets out a computation of the taxes of plaintiff for 1920 and shows that there was an additional tax due of $52,472.82 for that year. This amount subtracted from the $149,517.80 allowed by the commissioner leaves $97,044.98, as stated in the table referred to. In other words, it was claimed in the brief that the commissioner had made the overassessment too large and that instead of being entitled to a further refund for 1920 plaintiff admitted that it should receive less than the commissioner had allowed. It is clear that the brief set out no ground for a further refund of the taxes for 1920 and even if it should be considered as a claim would not avail the plaintiff. Moreover, it was not sworn to. But we do not think it was either a claim or an amendment to the claim. It merely made more specific the manner in which the plaintiff calculated its taxes as the basis of a protest against the additional assessment. The brief also contained a statement of its purposes which is too long to set out here but shows clearly that it was not intended to serve as a claim for refund and we have specially found that the record as a whole shows that neither of the parties to the action treated either of the briefs as an amendment to the claim or claims for refund. Plaintiff's contention that they were such can not be sustained.

It should be observed that the refund claims filed October 16, 1924, and June 6, 1925, contained no allegation that the commissioner had erred except in failing to refund $149,517.80 which he had allowed by letter and which he subsequently confirmed by a certificate. On the contrary, the claim filed June 6, 1925, accepted what the commissioner had done as. evidenced by his letter and as to what he might do on final audit proposed to take his figures. Nothing in these claims in the remotest degree pertained to the claim which is now made on behalf of the plaintiff that in computing plaintiff's taxes for 1920 a certain percentage of the overassessment for 1919 should be added to its invested capital for the purpose of recomputing the overassessment and refund to which it is entitled. No such claim having been presented to the commissioner when he made his final decision, it cannot now be considered.

What we have said above should not be taken as an intimation that we have: before us the necessary facts to compute the excess profits tax of plaintiff for 1920 in the light of the decision of the Board. of Tax Appeals with reference to the taxes of 1919. When the commissioner made his final determination of the taxes for 1920, he reaffirmed the overassessment of $149,517.80 for 1920 and made a large additional allowance, but we do not have the evidence upon which this computation was made. The evidence does, however, show that the amount of the 1919 taxes was still in litigation when the commissioner made his final decision as to the taxes for 1920 by issuing his certificate dated February 13, 1932, the contents of which have already been set out. It is contended by defendant that the overassessment of 1919, being still in litigation although eventually allowed, had not accrued when the commissioner made his decision and that consequently plaintiff was not entitled to have any part of it added to its surplus for 1920 and its taxes for that year reduced thereby. In view of what has already been held with reference to plaintiff's refund claims, it is not necessary that we should decide this question, but compare Lucas v. American Code Co., 280 U.S. 445, 50 S.Ct. 202, 74 L.Ed. 538, 67 A.L.R. 1010.

■ This brings us to the question of whether the commissioner was correct in refusing to pay $11,333.67 of the overpayment which he allowed on the taxes of 1920 on February 13, 1932. It will be remembered that the schedule which he signed showed that after the overassessment of $149,517.80 had been taken into account there was still an overpayment of $56,944.91 of which a part was refunded and the remainder, $11,333.-67 was withheld as "barred by the statute of limitations." This is not a statement that the sum last named was not due and owing to plaintiff but merely a conclusion of law on the part of the commissioner's office that plaintiff had no legal remedy as to this amount. The schedule sent out by the commissioner on the date last mentioned was the commissioner's last and final audit of the taxes of 1920. It was specifically covered by the terms of the claim of plaintiff filed June 6, 1925. Counsel for defendant contend that the commissioner was correct in holding that recovery was then and still is barred by the statute of limitations. With this we do not agree. The commissioner could not have made this audit without reconsidering the whole claim for it does not agree with any of his previous audits and rulings with reference to the amount of the overassessment. We think the reconsideration and certificate issued thereon constituted the final determination of the commissioner on the claim filed June 6, 1925, and that plaintiff's action is not barred. See Savannah Bank & Trust Co. v. United States, 58 F.(2d) 1068, 75 Ct.Cl. 245.

■ Plaintiff's attorney wrote a letter to the commissioner on June 17, 1932, which we have referred to above, and by the postscript thereto, which is set out, attempted to amend the refund claim filed June 6, 1925, by making an additional claim that there should be added to the invested capital of the taxpayer a certain per cent. of the overpayment determined by the Board of Tax Appeals for the year 1919. But it will be observed that this letter which included the amendment was not written until after the commissioner had issued the certificate of February 13, 1932, and made his final decision with reference to the taxes of 1920. Final disposition having been made of the claim, there was then nothing to amend and the amendment came too late. See Sugar Land R. Co. v. United States, 48 F.(2d) 973, 71 Ct.Cl. 628; Mutual Life

Ins. Co. v. United States, 49 F.(2d) 662, 72 Ct.Cl. 204. It should be specially noted that the postscript to plaintiff's letter was the first time the matter of adding any portion of the overpayment for 1919 to the invested capital for 1920 (in computing the taxes for 1920) had been set forth as a basis for a claim for refund.

The amended findings show that plaintiff's motion to amend the findings has been sustained in part, but it follows from what has been said above that the plaintiff's motion for new trial must be overruled and a new judgment entered in favor of plaintiff for the same amount as before.